[No. 18026. Department One. September 17, 1923.]

MAUDE I. HUFFINE, *as Executrix etc., Respondent*, v.
ALVIN INVESTMENT COMPANY, *Appellant.*[1]

DEATH (25)—CAUSE OF DEATH—EVIDENCE—SUFFICIENCY. That the death of a person, found at the foot of an elevator shaft, was caused by the negligence of the operator in starting the elevator while he was entering, thereby catching and crushing him, rests upon speculation and conjecture, where there was no evidence to support it, the operator had no knowledge of his fall, and the expert testimony as to the nature of the injuries (relied on) was not direct or positive and was founded on false assumptions.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered February 24, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Reversed.

*Grinstead, Laube & Laughlin, Poe, Falknor & Falknor,* and *Harry A. Rhodes,* for appellant.

*James R. Gates,* for respondent.

MACKINTOSH, J.—Charles W. Huffine was discovered in the bottom of the elevator shaft of appellant's building, with many injuries on his head, body and limbs. Without regaining consciousness, he soon thereafter died on a hospital operating table. This suit seeks to hold the appellant responsible for his death, the complaint alleging that he attempted to enter the elevator through the open door on the second floor, and while so entering, the operator negligently started the elevator, that he "was caught and pinched and crushed in said elevator and dropped to the pit thereof."

Of these allegations there is no direct proof; in fact, the direct evidence produced by the respondent is posi-

[1]Reported in 218 Pac. 194.

tive to the effect that the deceased never presented himself as a passenger to be carried by the elevator, and the operator placed on the stand by the respondent testified unequivocally that no such situation as outlined in the complaint ever arose; but that Mr. Huffine was taken in the elevator from the first to the second floor, there discharged, and the elevator door closed; that the elevator then went to the third floor, where it remained a short time, approximately the same as that testified to by persons on the second floor with whom Mr. Huffine had transacted business, and that no call for the elevator came from the second floor, but that on the trip down from the third to the first floor the operator found the second floor door open, and, closing it, descended to the first floor, where warning was given that someone was in the pit.

It seems highly probable that this recitation is correct, for the barbarous inhumanity which must be attributed to the young woman operating the elevator, if her story is untrue, staggers the imagination.

Having no direct proof that Mr. Huffine was injured as alleged in the complaint, recourse was had by the respondent to the expert testimony of doctors, answering hypothetical questions to prove that the injuries were so occasioned. To offset the theory of the appellant that the accident happened probably by Mr. Huffine's opening the second floor door, as it was testified he had done on a previous visit, and his looking into the shaft to see where the elevator might be (it being a slow moving car, used for both freight and passenger service, and its location not being ascertainable in any other way, because the elevator doors were of solid wood), with the probable idea of taking the stairway to the first floor in preference to waiting for the elevator if it was on a remote floor, and thereupon losing

his balance and falling down the shaft, the expert testimony was directed to establishing that no such extensive injuries would likely have been inflicted by a fall of thirty feet, but must have come from a crushing between the wall and the cage. The doctors, however, who attended Mr. Huffine and attempted to operate on him, positively negative the crushing idea.

Yet the question remains whether the respondent's experts presented enough to remove the case from the realm of conjecture and justify its submission to the jury.

A sympathetic study of the abstract and exhibits, subsequently fortified with a reading of the lengthy statement of facts, persuades us that no one can do better than guess as to the responsibility for this sad event. The expert testimony in answer to the hypothetical questions is by no means direct and positive, and the determining phases of the questions in the view of these experts were assumptions based on conditions positively negatived by the uncontradicted evidence. With these removed, the testimony amounts to nothing.

No necessity exists for a minute recapitulation of the evidence to show how conjecture meets counter-conjecture and how surmise must be substituted for proof in order to sustain the verdict. Nor is a review of the authorities illuminating, as the principle of law involved is of the utmost simplicity, and that is, that verdicts must rest on evidence and not on guesswork.

There is no field here for the play of *res ipsa loquitur*.

The judgment is reversed and the action dismissed.

MAIN, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.