[No. 30065.   Department Two.   May 9, 1947.]

DORIS GARDNER, *Individually and as Administratrix, Respondent*, v. AUGUST SEYMOUR *et al., Appellants.*[1]

[1]Reported in 180 P. (2d) 564.

*Shank, Belt, Rode & Cook,* for appellants.

*Copeland & Tollefson,* for respondent.

HILL, J.—Appellants have a six-story-and-basement building. On the two lower floors, they conduct a merchandising business, and the upper four floors are used for storing stock.

On October 3, 1944, Jean W. Gardner, who had been working for appellants for about two years and who was manager of the second floor store, went out of the store premises on the second floor, to a hallway, for the express purpose of getting stock replacements from one of the upper floors. From that hallway there were stairs going up and down, and also an entrance to a freight elevator.

About six minutes later, he was found at the bottom of the elevator shaft, critically injured. No one saw him in the intervening time. He told a fellow employee that he fell down the shaft. As a consequence of his injuries, he died eleven days later.

His widow sued, individually and as administratrix of his estate, to recover damages for his wrongful death. From a judgment on a verdict in her favor, this appeal is taken.

The freight elevator was a platform operating in a shaft closed on three sides and with the open side protected by doors which opened in the center. They could be latched on the inside by a hook-and-eye arrangement similar to but larger than those commonly found on screen doors. These doors did not close tightly and could be unlatched by slipping a knife blade or a piece of cardboard through the opening between them and lifting the hook out of the eye. There was some evidence that there was another safety device, called a bar lock, the operation of which was not very thoroughly explained, but it is clear that, whatever it was, when the doors were unlatched, a little shaking made it possible to open them.

The elevator operated by what is known as a tiller cable; you pulled down on the cable to send the elevator up, and you pulled up on it to move the elevator down. If the elevator was operated properly and the doors were kept latched, none of them would be open except at the level where the elevator was standing. If, however, stating a theoretical case, a person on the second floor wanted to use the elevator, which had been left on the sixth floor, he could insert a knife blade or a piece of cardboard in the opening between the doors on the second floor and unlatch the doors and, by shaking them a little, get them open, and then, by the proper manipulation of the cables in the elevator shaft, he could bring the elevator to the second floor level, thus avoiding a climb; but, by this procedure, the elevator doors on the sixth floor would have been left open.

As to what actually happened in this case, we have absolutely no evidence. There was no testimony as to where the elevator was found after the fall; no testimony as to what, if any, elevator doors were found to be open.

The evidence concerning the construction and manner of operating the elevator doors was sufficient to take the case to the jury on the questions of whether or not the appellants had provided a safe place for their employee to work, and whether or not they had violated the provisions of the "factory act" requiring that the openings of all elevators in storehouses, warerooms, and stores be protected, where practicable, by good and sufficient fences, gates, or other safeguards, and that all due diligence be used to keep all such means of protection closed except when necessary to have the same open that they might be used. Rem. Rev. Stat., § 7660 [P.P.C. § 699-97].

Parenthetically, we will say here that instruction No. 12, complained of by appellants, stating that they were guilty of negligence, as a matter of law, if the jury should find that they failed to provide for their elevator *"all the safeguards* which from the evidence you find were practicable," was erroneous. Appellants' obligation, under the statute, was to provide "good and sufficient fences, gates, or other safeguards." However, we have no doubt that the trial court would have corrected this error if it had been given an opportunity so to do; the exception taken was not sufficient to apprise the trial court of the error now claimed.

From what has been said, it will appear that respondent has established: (1) that Jean Gardner fell down an elevator shaft and died as a result of his injuries; and (2) that there was evidence from which a jury could have found that appellants failed to provide a safe place for Mr. Gardner to work, and that they failed to comply with the provisions of Rem. Rev. Stat., § 7660.

Respondent, however, has failed to establish that appellants' negligence was the proximate cause of Mr. Gard-

ner's death. There are at least two equally reasonable explanations of Mr. Gardner's fall:

Hypothesis 1. The elevator might, sometime before Mr. Gardner's fall, have been stopped on the second floor. Someone on one of the upper floors, say the fifth, not wanting to come down after the elevator, may have opened the doors on the fifth floor and, by operating the cables, brought the elevator to that floor, thus leaving the doors open on the second floor. Mr. Gardner, seeing the doors open on the second floor and assuming that the elevator was there, may have walked into the elevator shaft. The inadequate safeguards would have been the proximate cause of his death.

Hypothesis 2. Knowing that the elevator was above him and not wanting to walk up to it, Mr. Gardner may have opened the doors on the second floor by the method indicated, with the intention of operating the cables in such a way as to bring the elevator down to him, and, while attempting so to do, may have fallen down the shaft. Were that the case, the only reason appellants' safeguards did not work, inadequate as they may have been, was that Mr. Gardner deliberately removed them to avoid the inconvenience of climbing the stairs. His own negligence would then have been the proximate cause of his fall.

(We do not mean to indicate that we believe Mr. Gardner fell from the second floor—it might have been from any floor below the sixth; nor that these are the only hypotheses that are possible. Only three things are certain in this case: the fall, the death, and that the elevator doors could be opened from the outside.)

■ We recognize that this is a case in which the presumption will be indulged that the decedent used due care, since there is no evidence to the contrary. Respondent still fails to make a *prima facie* case, because she cannot establish the negligence of the appellants as the proximate cause of Mr. Gardner's injuries by relying upon that presumption. In the case of *Young v. Chicago, M. St. P. &*

*P. R. Co.*, 223 Iowa 773, 273 N. W. 885, speaking of the presumption of due care, the court said:

"This presumption only goes to the question of freedom from contributory negligence, and cannot be used to supply the need of proof of causal connection between the negligence of the defendant and the injury and death of the decedent."

In *Scarpelli v. Washington Water Power Co.*, 63 Wash. 18, 114 Pac. 870, and *Morris v. Chicago, M. St. P. & P. R. Co.*, 1 Wn. (2d) 587, 97 P. (2d) 119, 100 P. (2d) 19, we quoted with approval from the case of *Peters v. Lohr*, 24 S. D. 605, 124 N. W. 853, in which it was said:

"A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until *prima facie* evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence. . . . A presumption is not evidence of a fact, but purely a conclusion. Elliott, Ev. §§ 91, 92, 93; Wigmore, Ev. §§ 2490, 2491."

In 144 A. L. R., at p. 1473, there is an annotation entitled "Presumption of due care by person killed in accident as supporting or aiding inference of negligence by defendant, or inference that latter's negligence was proximate cause of accident." Many cases are there cited in support of the general rule that a presumption that a decedent exercised due care for his own safety cannot be used to create an inference of negligence on the part of the defendant, or to supply evidence, or to aid in the establishment of such negligence, or to show that the defendant's negligence was the proximate cause of the accident.

We have examined and considered the cases referred to in that note in which it has been held that, where there is evidence of negligence by the defendant sufficient to constitute a case submissible to a jury, in an action based upon death by accident, the presumption that the decedent was exercising due care for his own safety might at least serve the purpose of resolving any doubt in the minds of the

jurors in a case of equipoise upon the subject created by the defendant's insistence that the proximate cause of the accident was not his own negligence but some conduct of the decedent. These cases, some eight in number, come from five jurisdictions, California, Kentucky, Missouri, Texas, and Utah. Only in the California cases is there any consideration of the purpose or function of a presumption, and the rule is stated to be that a presumption is evidence in that jurisdiction. In most of the cases referred to, we would have arrived at the same conclusion as did the courts deciding them, but on the basis that there was a reasonable inference, from the evidence, that the defendants' negligence was a proximate cause of the decedents' injuries. Such an inference is described by Judge Chadwick in *Parmelee v. Chicago, M. & St. P. R. Co.,* 92 Wash. 185, 158 Pac. 977, as

" . . . that conclusion to which the mind will inevitably return when it weighs the circumstances for either side, and will say, not arbitrarily, but as a result of due deliberation and a measuring of all the facts, that the proximate cause of the accident is to be found in the negligent conduct of the party charged."

To the extent that those cases hold that the presumption of due care can be used as evidence to supply the need of proof of causal connection between the negligence of a defendant and the death of a decedent, they represent a minority view which we decline to follow.

The test to be applied here is whether the jury could have determined that the appellants were liable as a reasonable inference from the evidence, or whether the verdict rests on conjecture. As was said in *Home Ins. Co. v. Northern Pac. R. Co.,* 18 Wn. (2d) 798, 802, 140 P. (2d) 507, 147 A. L. R. 849:

"The rule is well established that the existence of a fact or facts cannot rest in guess, speculation, or conjecture. It is also the rule that the one having the affirmative of an issue does not have to make proof to an absolute certainty. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the thing in question, such as the *occurrence* of

a fire, happened in such a way as to fix liability upon the person charged therewith than it is that it happened in a way for which a person charged would not be liable. In applying the circumstantial evidence submitted to prove a fact, the trier of fact must recognize the distinction between that which is mere conjecture and what is a reasonable inference."

The following statement from 9 Blashfield, Cyclopedia of Automobile Law & Practice (part 2, Perm. ed.) 520, § 6126, is quoted in *Paddock v. Tone,* 25 Wn. (2d) 940, 949, 172 P. (2d) 481:

"The burden of proving proximate cause is not sustained unless the proof is sufficiently strong to remove that issue from the realm of speculation by establishing facts affording a logical basis for all inferences necessary to support it,"

and, in the same case, we quoted the following from *Wright v. Wilson,* 64 F. Supp. 694:

"The burden of proof was upon the plaintiff to show not only in what the defendant was negligent but also that his negligence in that respect was the proximate or efficient cause of the accident. . . .

"It has been held many times that negligence consisting in the violation of a statutory duty by the defendant will not support a verdict unless it can be shown that such violation was the proximate cause of the injury. Nor can a plaintiff meet his burden of proving negligence merely by showing that he himself was free from contributory negligence, and that statement applies equally to his burden in the matter of proximate cause. In the present case, for example, the plaintiff was presumed to have been exercising due care and the jury so found but, so far as the evidence goes, he might, without any negligence on his part, have slipped or stumbled forward in front of the defendant's car or he might have been pushed or jostled by his companion, and the defendant would not have been liable for the accident."

We have frequently said that, if there is nothing more tangible to proceed upon than two or more conjectural theories under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred. *Hansen v. Seattle Lbr.*

*Co.,* 31 Wash. 604, 72 Pac. 457; *Armstrong v. Cosmopolis,* 32 Wash. 110, 72 Pac. 1038; *Reidhead v. Skagit Co.,* 33 Wash. 174, 73 Pac. 1118; *Whitehouse v. Bryant Lbr. & Shingle Co.,* 50 Wash. 563, 97 Pac. 751; *Chilberg v. Colcock,* 80 Wash. 392, 141 Pac. 888; *Parmelee v. Chicago, M. & St. P. R. Co., supra; Johanson v. King Co.,* 7 Wn. (2d) 111, 109 P. (2d) 307; *Home Ins. Co. v. Northern Pac. R. Co., supra.* In *Whitehouse v. Bryant Lbr. & Shingle Co., supra,* we said:

"For conceding, for the purpose of the case, that there was testimony upon which the jury might have been warranted in finding negligence on the part of the respondent, there is no testimony upon which a jury could have based a conclusion that such negligence was the proximate cause of the injury, not because there was no eyewitness to the accident, since it is undoubtedly the established law that the proximate cause may be shown by direct evidence or it may be adduced as an inference from other facts proven, but because no legitimate inference can be drawn that an accident happened in a certain way by simply showing that it might have happened in that way, and without further showing that it could not reasonably have happened in any other way,"

and, in *Parmelee v. Chicago, M. & St. P. R. Co., supra,* we quoted from *Wheelan v. Chicago, M. & St. P. R. Co.,* 85 Iowa 167, 175, 52 N. W. 119, as follows:

"In *Asbach v. Chicago, B. & Q. Railway Co.,* 74 Iowa 250, it is said: 'A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent merely with that theory, for that may be true, and yet they may have no tendency to prove the theory. This is the well settled rule.' It seems to us that we may reasonably draw other conclusions as to the cause of this injury from the facts in evidence than those contended for by the plaintiff. 'Verdicts must have evidence to support them, and must not be founded on mere theory or supposition.' *Bothwell v. C., M. & St. P. Railway Co.,* 59 Iowa, 194. A jury will not be permitted merely to conjecture how the accident occurred. *Cumberland & P. R. Co. v. State* (Md.), 20 Atl. Rep. 785. And it is said that 'in matters of proof we are not justified in inferring from

mere possibilities the existence of facts.' *Baltimore & O. R. Co. v. State* (Md.), 18 Atl. Rep. 971."

We then said:

"In discussing the rules of circumstantial evidence, Mr. Labatt, §§ 1602, 1603, 1604, says that a recovery cannot be had where the plaintiff's evidence is equally consistent with the absence as with the existence of negligence, and that the establishment of a juridical connection between the master's negligence and the injury being one of the essential prerequisites to the maintenance of the action, the burden of proving that there was such a connection rests on the plaintiff; that the action cannot be maintained if, after all the testimony is put in, it remains doubtful whether the injury resulted from the cause suggested by the master or the cause suggested by the servant."

█ Respondent, apparently recognizing this weakness in her case, sought to invoke the doctrine of *res ipsa loquitur* to fill in the gaps in her evidence and to throw the burden of exculpatory explanation on the appellants.

The authorities abundantly support the statement in the article, "The Doctrine of Res Ipsa Loquitur in Washington," 13 Wash. L. Rev. 215, 220, that:

"The prerequisites to the application of the doctrine, then, are: (1) that the circumstances be such as to logically allow a presumption of negligence; and (2) that the circumstances suggest superior knowledge or opportunity for explanation on the part of the party charged. And before these requirements can be said to exist, exclusive control in the defendant will be essential as a matter of logic."

We have here a situation where the person injured knew as much about the elevator and its manner of operation as did the appellants, perhaps more, and there is no element of exclusive control. We have further pointed out that the person who may invoke the rule is usually

" . . . one to whom the defendant owed a duty of protection and who was under no obligation to, and did not, know or have reason or opportunity to know of the danger that threatened him." *Anderson v. McCarthy Dry Goods Co.*, 49 Wash. 398, 95 Pac. 325, 126 Am. St. 870, 16 L. R. A. (N.S.) 931.

In *Wellons v. Wiley*, 24 Wn. (2d) 543, 166 P. (2d) 852, we quoted, with approval, the following excerpt from the opinion in *Klein v. Beeten*, 169 Wis. 385, 172 N. W. 736, 5 A. L. R. 1237, where it was held that the burden was on the plaintiff affirmatively to prove negligence, and that

" . . . while the inferences allowed by the rule or doctrine of *res ipsa loquitur* constitute such proof, it is only where the circumstances leave no room for a different presumption that the maxim applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it cannot be invoked. *Quass v. Milwaukee G. L. [Gaslight] Co.,* 168 Wis. 575, 170 N. W. 942."

The respondent cannot substitute the doctrine of *res ipsa loquitur* for proof of proximate cause in this case. Much as we sympathize with the respondent, the proof of proximate cause cannot be left to conjecture or speculation. In *Huffine v. Alvin Inv. Co.*, 126 Wash. 490, 218 Pac. 194, Mr. Huffine was found fatally injured in the bottom of an elevator shaft, and there was no evidence as to how he got there. A judgment entered on a verdict for the plaintiff was reversed, the court stating:

"No necessity exists for a minute recapitulation of the evidence to show how conjecture meets counter-conjecture and how surmise must be substituted for proof in order to sustain the verdict. Nor is a review of the authorities illuminating, as the principle of law involved is of the utmost simplicity, and that is, that verdicts must rest on evidence and not on guesswork.

"There is no field here for the play of *res ipsa loquitur*."

In lieu of proof of proximate cause, respondent also relies on the following quotation from 38 Am. Jur. 838, § 166:

"If the injury complained of is a natural and probable consequence of a violation of the statute, then that violation is correctly taken as the proximate cause of the injury. If the very injury has happened which was intended to be prevented by the statute law, that injury must be considered as directly caused by the nonobservance of the law."

As supporting this rule, American Jurisprudence cites cases from South Carolina, West Virginia, and Texas. This

court did not adopt that rule in *Kelly v. The Vogue*, 21 Wn. (2d) 785, 153 P. (2d) 277, as contended by respondent. We, in that case, merely followed the rule which we have consistently adhered to, that the violation of an ordinance or statute, generally speaking, is negligence, and that a person guilty of such negligence is liable for injuries proximately caused thereby. The rule was stated in *Berry v. Farmers Exchange of Walla Walla*, 156 Wash. 65, 286 Pac. 46:

"That violation of an ordinance, generally speaking, is negligence, there can be no dispute, but the law is well settled that there must be a causal connection between the negligence arising from the violation of the ordinance and the accident itself, before a cause of action arises from such violation. This rule is recognized in the case of *Ross v. Smith & Bloxom*, 107 Wash. 493, 182 Pac. 582. See, also, *Bullis v. Ball*, 98 Wash. 342, 167 Pac. 942; 22 R. C. L., p. 113, § 3."

Other cases so holding are legion, two of the more recent ones being *Mathers v. Stephens*, 22 Wn. (2d) 364, 156 P. (2d) 227, and *Everest v. Riecken*, 26 Wn. (2d) 542, 174 P. (2d) 762.

■ Respondent, by her argument on this point, asks us to say that, if a jury can find that a building owner failed to provide the safeguards for an elevator shaft required by statute, and if an employee is injured in the elevator shaft, the injury must be deemed to be attributable to the violation of the statute.

The West Virginia case which is the basis for the statement in 20 R. C. L. 43, § 37, which is carried over into 38 Am. Jur. 837, § 166, on which respondent relies, is *Norman v. Virginia-Pocahontas Coal Co.*, 68 W. Va. 405, 69 S. E. 857, 31 L. R. A. (N.S.) 504. That case involved the question of the liability of a coal mining company for injuries sustained by a boy who had been employed in violation of a statute prohibiting children under fourteen years of age from working in mines. This was an entirely different type of statute from that we have under consideration here, and it was aimed at an unusual type of negligence.

It was intended for the protection of individuals who were deemed to be incapable of protecting or safeguarding themselves. While the majority opinion indicated that there could be no defense of "assumption of risk," it was suggested that in certain circumstances the defense of contributory negligence might be available. There was a strong dissent insisting that the defense of contributory negligence should never be permissible under such a statute.

All other cases now cited as supporting the statement in American Jurisprudence are cases which have quoted and relied upon the statement in Ruling Case Law based upon this West Virginia case.

In any event, the great weight of authority supports the rule which this court has followed and which is nowhere more clearly stated than by Justice Jaggard, speaking for the Minnesota supreme court, in *Anderson v. Settergren*, 100 Minn. 294, 111 N. W. 279:

"Plaintiff claims [as here] that the fact of the defendants' violation of this statute constituted negligence per se, and established a prima facie case in favor of the plaintiff. In order that a complainant may recover in accordance with the general law for failure to perform a statutory duty, he must show (a) that he is within the class for whose benefit legislation creating not a purely public duty was designed; (b) that there was violation of statutory requirement by the defendant; and (c) that he suffered damage as the proximate result of such violation."

There are lengthy notes in 9 L. R. A. (N.S.) 338 and L. R. A. 1915E, 500, on "Private action for violation of statute not expressly conferring it." In the latter note (p. 516) appears the following statement:

"Like the cases cited in the primary note, those decided since it was published hold fast to the general abstract principle that the neglect to obey a statute commanding or forbidding something to be done or omitted for the benefit and protection of others never affords the sufferer of a coincident injury a right of action, unless such negligence was the proximate cause of the injury."

There are, of course, many cases where the causal connection between an injury and the violation of the statute is so plain that there can be no reasonable doubt or difference of opinion that the violation is the proximate cause of the injury. We said, in *Mathers v. Stephens, supra*:

"There are many cases in which we have held, as a matter of law, that the negligence of one violating a statute or ordinance was a proximate cause of an accident, but in those cases the conduct of the party constituting the violation was so clearly a cause thereof that by no process of reasoning could it be said the accident would not have happened if it were not for such conduct. In this case the effect of the statutory negligence of appellant is debatable and open to differences of opinion."

In the present case, the effect of any violation by the appellants of the "factory act" on the injury and death of Jean Gardner is purely a matter of speculation.

From what has heretofore been said, it follows that the trial court erred in overruling appellants' challenge to the sufficiency of the evidence and their motion for judgment notwithstanding the verdict, and in entering judgment on that verdict. It therefore becomes unnecessary to pass upon the questions raised with reference to the instructions complained of. The judgment is reversed and the action dismissed.

STEINERT, ROBINSON, and JEFFERS, JJ., concur.

MALLERY, C. J., dissents.