[No. 32448. Department Two. January 21, 1954.]

WILLIAM WILSON, *as Administrator de Bonis Non, Respond-ent,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant.*[1]

*Imus & Marsh, Dean H. Eastman,* and *Roscoe Krier,* for appellant.

*McCoy & Elliott* and *Wayne D. Purcell,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment, after a verdict by a jury, for damages as the result of a collision at a railroad crossing, between decedents' automobile and a train operated by defendant's employees.

William E. and Elinor A. Stroud resided at Kelso. They were the parents of two daughters, Veronica, born Decem-

[1]Reported in 265 P. (2d) 815.

ber 30, 1943; and Patricia, born March 12, 1945. July 1, 1945, they drove to Seattle. On the way home they stopped to visit with Mrs. Stroud's brother, William Wilson, and his wife. Mr. Wilson was stationed at McChord Field, and resided in Tacoma. They had a few stubbies of beer before and after dinner. After dinner they played cards until about 11:30 p. m., daylight saving time, when the Strouds left for Kelso. At about midnight, standard time (1:00 a. m. daylight saving time), a Northern Pacific freight train, consisting of an engine and ninety-three cars, was proceeding northerly from Portland to Seattle. About a mile from East Olympia, at the Rich road crossing, the engineer heard a crash "and saw an object, or the outline of an object flying." He immediately applied the emergency brakes, and the train proceeded thirty-five cars ahead before it came to a stop. He and the fireman went back and found a 1940 Mercury coupe, standing upright on the east side of, and parallel to, the track, facing southerly (toward the crossing), and approximately 127 feet from the crossing. The body of Mrs. Stroud was in the back portion of the car near the right rear fender. The right side of the automobile was sheared off, starting from the back of the right front fender and extending back to the right rear fender. The rest of the car was in fair condition. The body of Mr. Stroud was lying on the ground approximately forty feet ahead of the car (eighty feet from the crossing). Three or four witnesses, including Van R. Hinkle, the coroner, detected the odor of liquor on him. The engine of the automobile was running at quite a high rate of speed, and its lights were off. There were no skid marks on the road in the vicinity of the crossing.

Coroner Hinkle testified that the lights were off and that the light switch was in an off position; that the light switch was located on the steering post; that it was not a push and pull switch, but one which operated by flicking to the right or left. Sergeant Mattson, of the state patrol, who investigated the accident, testified that if the light switch was in the off position after the crash, the crash would not have thrown the switch. However, three witnesses for the plaintiff testi-

fied in rebuttal that the light switch on the vehicle in question was located on the dashboard; that a pull out turned the lights on and a push forward turned them off.

The complaint alleged that the collision and damages were the result of and proximately caused by the negligence of the defendant, its agents, servants, and employees in the following particulars:

"(1) In failing to keep a proper lookout for approaching automobiles, (2) in carelessly and negligently operating said railroad train at an excessive rate of speed under all circumstances, to-wit: At a rate of speed in excess of 55 mph, (3) in carelessly and negligently maintaining and allowing to remain on the right-of-way, the weeds, vegetation and trees so as to obscure the view of users of the highway, (4) in carelessly and negligently failing to ring the bell and/or sound the whistle of the locomotive until such time as it was too late for the said William E. Stroud, deceased, to slacken his speed or stop his car, (5) in carelessly and negligently failing to slacken the speed of the railroad train, (6) in carelessly and negligently failing to warn users of the highway by appropriate means of the extra hazardous nature of the crossing, or of the existence of the crossing."

Defendant denied negligence and alleged contributory negligence on the part of the deceased husband.

At the point in question, the railroad runs in a northerly and southerly direction and maintains a double track. The distance between the two tracks is 13.2 feet. The northbound track is to the east, and the southbound track to the west. Rich road intersects it at right angles. In traveling from highway 99, it is necessary to cross the southbound track before reaching the northbound track. Twenty feet from each track, close to the right-hand side of the road, are cross-buck signs about ten feet high, painted black with white stripes. The cross-members are about four feet in length. One cross-buck says, "RAILROAD" and the other, in large letters, "CROSSING." Each has a sign saying "2 TRACKS."

Rich road intersects highway 99 at a point about six miles south of Olympia and proceeds in an easterly direction. It is not part of the highway between Tacoma and Kelso. Very

little traffic passes over it either in the day time or the night time. It is a hard-surfaced, oil-bound, macadam road. It is 604 feet from the center of highway 99 to the center of the railroad tracks. Between these two points, the highest elevation (which is 250 feet from the tracks) is 5.42 feet above the rails. A person going from the highway travels up for 354 feet to an elevation of 5.42 feet and then down for 250 feet to the tracks. About 350 feet from the tracks, well off of the right of way, on the right-hand side of the road, and before the highest elevation is reached, there is a nonluminous disk crossing sign. It is painted yellow with two crosses, indicating a track crossing, with the letters "R.R." This sign is installed by the highway department, not by the railroad company, and is called a "Distance Crossing Sign."

Mr. Wilson visited the scene the morning following the accident. He testified that Rich road is in a cut; that there is a five foot bank on one side and a three to five foot bank on the other side, with ferns and brush right up to the edge of the road. He testified that farther ahead of the highway warning sign, there were trees and branches overhanging, which blocked the view of the cross-buck signs installed by the railroad company. State patrol officers who investigated the accident that night testified that the cross-buck signs were clearly visible in time to stop.

The jury returned a verdict for the plaintiff, and this appeal follows.

Appellant contends that the court erred: (1) in denying appellant's motion for directed verdict; (2) in denying appellant's motion for judgment notwithstanding the verdict; (a) respondent failed to prove that appellant was guilty of any negligence; (b) if appellant was guilty of any negligence, respondent failed to prove that such negligence was the proximate cause of the death of Mr. and Mrs. Stroud; (3) in giving certain instructions; (4) in refusing to give certain requested instructions; (5) in entering judgment against appellant.

The testimony is uncontradicted that the employees of the railroad company kept a proper lookout for approaching

automobiles; did not operate the train at a speed in excess of fifty-five miles per hour; that they rang the bell and sounded the whistle of the locomotive (started to whistle at the whistle board a quarter of a mile from the crossing and continued to whistle over the crossing); and that they did not carelessly and negligently fail to slacken the speed of the train. The only question of negligence upon which there was disputed testimony was whether or not appellant carelessly and negligently maintained and allowed weeds, vegetation, and trees to remain on the right of way, so as to obscure the view of users of the highway, and failed to warn users of the highway by appropriate means of the extrahazardous nature of the crossing, or of the existence of the crossing. This crossing is not in the same category as the usual so-called "prairie crossing," which can be seen for a considerable distance from every direction. Here a person traveling easterly on the Rich road would climb a hill until he reached a distance of about 250 feet from the tracks, after which he would start down grade.

In *Hopp v. Northern Pac. R. Co.*, 20 Wn. (2d) 439, 147 P. (2d) 950, we said that a railroad crossing

" . . . is more than ordinarily dangerous if it is so peculiarly dangerous that prudent persons cannot use the same with safety unless extraordinary means are used to approach such place."

Although the testimony was quite sketchy on this issue, still, we believe that there was a sufficient conflict in the evidence to permit the jury to decide whether or not appellant permitted weeds, vegetation, and trees to remain on the right of way so as to obscure the vision, and, if so, whether or not appellant used appropriate means to warn users of the road of the nature or existence of the crossing. However, if it be conceded that appellant was negligent in this respect, we are of the opinion that appellant failed to prove that such negligence was the proximate cause of the accident.

Without stating the facts, we quote our language in reference to proximate cause in the following cases:

"For conceding, for the purpose of the case, that there was testimony upon which the jury might have been warranted in finding negligence on the part of the respondent, there is no testimony upon which a jury could have based a conclusion that such negligence was the proximate cause of the injury, not because there was no eyewitness to the accident, since it is undoubtedly the established law that the proximate cause may be shown by direct evidence or it may be adduced as an inference from other facts proven, but because no legitimate inference can be drawn that an accident happened in a certain way by simply showing that it might have happened in that way, and without further showing that it could not reasonably have happened in any other way. Even if it be conceded that the decedent met his death by coming in contact with the Rosser saw—and it may be that there is room for such an inference under the testimony in the case— there is no testimony whatever tending to show in what manner he came in contact with the saw—whether it was in the line of his duty, whether it was necessary in the performance of his work to rise up under the saw, whether he pulled the saw down upon himself, whether he failed to take notice of an obvious peril, or whether the accident was caused by any one of the many conceivable ways which would not charge the master with liability." *Whitehouse v. Bryant Lbr. & Shingle Mill Co.,* 50 Wash. 563, 97 Pac. 751.

"Liability does not rest in the negligent act, but upon proof that the act of negligence was the proximate cause of the injury." *Wilkie v. Chehalis County Logging & Timber Co.,* 55 Wash. 324, 104 Pac. 616.

"We have held that negligence may be proven by circumstantial evidence: [Citing cases]. We have also held that proof of negligence does not have to be beyond a reasonable doubt. [Citing cases]. But this court has never held, nor has any other that we are aware of, that the proof of the proximate cause could be left to conjecture or speculation. See *Weckter v. Great Northern R. Co.,* 54 Wash. 203, 102 Pac. 1053, and cases cited. · · ·

"The supreme court of Iowa, in *Wheelan v. Chicago, M. & St. P. R. Co.,* 85 Iowa 167-175, 52 N. W. 119, quotes from other cases as follows:

" 'In *Asbach v. Chicago, B. & Q. Railway Co.,* 74 Iowa 250, it is said: "A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be

consistent merely with that theory, for that may be true, and yet they may have no tendency to prove the theory. This is the well settled rule." It seems to us that we may reasonably draw other conclusions as to the cause of this injury from the facts in evidence than those contended for by the plaintiff. "Verdicts must have evidence to support them, and must not be founded on mere theory or supposition." *Bothwell v. C. M. & St. P. Railway Co.,* 59 Iowa 194. A jury will not be permitted merely to conjecture how the accident occurred. *Cumberland & P. R. Co. v. State* (Md.), 20 Atl. Rep. 785. And it is said that "in matters of proof we are not justified in inferring from mere possibilities the existence of facts." *Baltimore & O. R. Co. v. State* (Md.), 18 Atl. Rep. 971.'

"In discussing the rules of circumstantial evidence, Mr. Labatt, §§ 1602, 1603, 1604, says that a recovery cannot be had where the plaintiff's evidence is equally consistent with the absence as with the existence of negligence, and that the establishment of a juridical connection between the master's negligence and the injury being one of the essential prerequisites to the maintenance of the action, the burden of proving that there was such a connection rests on the plaintiff; that the action cannot be maintained if, after all the testimony is put in, it remains doubtful whether the injury resulted from the cause suggested by the master or the cause suggested by the servant. If there is nothing more tangible to proceed upon than two or more conjectural theories, it is immaterial that the theories suggested in the interest of the servant is more probable than that suggested in the interest of the master, so that the rule is laid down:

" 'If the existing state of affairs, however dangerous, might, according to the ordinary experience of mankind, have been due to other causes than negligence for which the defendant was responsible, then it was for the plaintiff to exclude the operation of those causes by the greater weight of evidence.' *Brooks v. Kinsley Iron & Machine Co.,* 202 Mass. 228, 231, 88 N. E. 771. . . .

"Possibility cannot be pyramided on possibility to make a chain of evidentiary circumstances. It is not a possible theory, but inference from facts reasonably ascertained, which impels. It is that conclusion to which the mind will inevitably return when it weighs the circumstances for either side, and will say, not arbitrarily, but as a result of due deliberation and a measuring of all the facts, that the proximate cause of the accident is to be found in the negli-

gent conduct of the party charged." *Parmelee v. Chicago, M. & St. P. R. Co.,* 92 Wash. 185, 158 Pac. 977.

"The test to be applied here is whether the jury could have determined that the appellants were liable as a reasonable inference from the evidence, or whether the verdict rests on conjecture. As was said in *Home Ins. Co. v. Northern Pac. R. Co.,* 18 Wn. (2d) 798, 802, 140 P. (2d) 507, 147 A.L.R. 849: . . .

"The following statement from 9 Blashfield, Cyclopedia of Automobile Law & Practice (part 2, Perm. ed.) 520, § 6126, is quoted in *Paddock v. Tone,* 25 Wn. (2d) 940, 949, 172 P. (2d) 481:

" 'The burden of proving proximate cause is not sustained unless the proof is sufficiently strong to remove that issue from the realm of speculation by establishing facts affording a logical basis for all inferences necessary to support it,' "

and, in the same case, we quoted the following from *Wright v. Wilson,* 64 F. Supp. 694:

" 'The burden of proof was upon the plaintiff to show not only in what the defendant was negligent but also that his negligence in that respect was the proximate or efficient cause of the accident. . . .

" 'It has been held many times that negligence consisting in the violation of a statutory duty by the defendant will not support a verdict unless it can be shown that such violation was the proximate cause of the injury. Nor can a plaintiff meet his burden of proving negligence merely by showing that he himself was free from contributory negligence, and that statement applies equally to his burden in the matter of proximate cause. In the present case, for example, the plaintiff was presumed to have been exercising due care and the jury so found but, so far as the evidence goes, he might, without any negligence on his part, have slipped or stumbled forward in front of the defendant's car or he might have been pushed or jostled by his companion, and the defendant would not have been liable for the accident.' " *Gardner v. Seymour,* 27 Wn. (2d) 802, 180 P. (2d) 564.

■ It is true that, in some of the cases above quoted, there were no witnesses to the accident and the discussions of proximate cause were interspersed with the discussions of primary negligence. It is also true that the burden of proving contributory negligence rests upon the one alleging it. Nevertheless, a person seeking relief in damages for in-

juries sustained must not only prove a negligent act, but must also prove that such negligent act was the proximate cause of the injuries. Proximate cause need not be proved by direct evidence. It may be proved by circumstantial evidence. But such proof must be upon evidence, not speculation or conjecture, nor may it be by inference piled upon inference.

Assuming that appellant was negligent in the respects mentioned hereinbefore, what else do we know about the accident? We know that the car in which Mr. and Mrs. Stroud were riding was struck at the Rich road crossing by a train operated by appellant, and that both Mr. and Mrs. Stroud were killed. We know that Rich road is not on the way from Tacoma to Kelso. We do not know why they turned off. Mr. Wilson testified that he did not know whether Mr. Stroud had ever been on that road before. We know that there were no skid marks on the highway in the vicinity of the railroad tracks. We know that, after the accident, the engine of the automobile was running at quite a high rate of speed and that the lights of the car were off. We do not know how the accident happened nor who was responsible. We do not know what was the proximate cause. There is not sufficient evidence in the record to permit us to conclude that the negligence of appellant, if any, was the proximate cause of the accident. In order to arrive at such a conclusion, we would have to resort to speculation and conjecture.

The trial court erred in denying appellant's motion for directed verdict and also in denying appellant's motion for judgment notwithstanding the verdict. The judgment is reversed.

GRADY, C. J., HAMLEY, DONWORTH, and FINLEY, JJ., concur.

---

March 9, 1954. Petition for rehearing denied.