Laurence R. WENZEL, Appellant,

v.

UNITED STATES of America.

No. 17805.

United States Court of Appeals
Third Circuit.

Argued Oct. 7, 1969.

Decided Dec. 8, 1969.

Stanley J. Levy, Kreindler & Kreindler, New York City (Gelman & Gelman, Paterson, N. J., by Milton G. Sincoff, New York City, on the brief), for appellant.

Walter H. Fleischer, Dept. of Justice, Washington, D. C. (William D. Ruckelshaus, Asst. Atty. Gen., Donald Horowitz, U. S. Atty., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before McLAUGHLIN, FORMAN and ALDISERT, Circuit Judges.

OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

Appellant Wenzel seeks reversal of a decision of the United States District Court for the District of New Jersey awarding judgment to the Government in this personal injury Federal Tort Claims Act suit. 291 F.Supp. 978 (D.N.J.1968). The controlling issue is whether the negligent act of the Government's agent—the negligent dissemination of certain in-flight information by an air traffic controller to Captain Wenzel—was a proximate cause of the crash of the aircraft of which appellant Wenzel was pilot-in-command. The court below found some negligence on the part of the

appellee but held affirmatively that " * * * the evidence is insufficient to sustain the plaintiff's burden of proving that the negligence imputable to the defendant was a proximate or concurring cause of the crash of the aircraft * * *."

At approximately 6:13 P.M. on February 16, 1963, after compliance with routine pre-flight procedures and having received clearance from a Government air-traffic controller, appellant and his co-pilot took off from McChord Air Force Base (McChord), Washington State, in a commercially owned C-46 two-engine cargo airplane. Although the flight's destination was Malstrom Air Force Base, Great Falls, Montana, roughly seven minutes later when the plane was 13 miles northeast of McChord, the crew requested permission to return to the base. Approximately 6 minutes after take-off, the plane's left engine had experienced a "runaway prop", a grave inflight emergency. When informed of the nature of the plane's difficulty, the controller handling the flight in question concluded that an emergency existed, and all radar room personnel in the Federal Aviation Agency's Radar Approach Control facility at McChord Air Force Base were alerted.

Following an initial exchange of information concerning the plane's prospective return to McChord, and after the plane has experienced two "runaway prop" episodes with the left engine,[1] the air traffic controller reported to the crew that the plane was about nine miles northeast of McChord and "exactly five miles north of the runaway at Thun Field." Wenzel, supra, at 980. The reference to Thun Field by the controller was the first information received by the crew concerning the existence of Thun Field. The crew had no personal knowledge whatsoever about Thun Field, and had to rely completely on the controller's transmissions and their visual observations for pertinent data upon which to base decisions concerning Thun.

After learning of Thun Field's proximity to their flight position, the crew asked the controller to have the Field flash its landing lights,[2] and requested a radar vector to Thun Field. The controller gave the proper instructions and advised the aircraft that it was then four miles north of Thun and correctly enroute to the heading provided. The controller then volunteered that "The length of the runway is 5300." When the plane was one mile from Thun Field, the controller gave additional flight information. However, as the plane approached for a landing, it advised the controller as follows: "High, we'll have to go around." The plane, though over the center of the runway, turned left sharply, climbed over adjacent trees, and crashed a mile-and-a half northeast of the airport.

The court below found that the transmission to the crew that the runway length was 5,300 feet was incorrect, and that "The Thun Field runway extends in a northeast-southwest direction for a physical distance of 3040 feet. Its corrected length was 2667 feet." Wenzel, supra, at 981. Regarding this information as above stated the trial court held, inter alia: " * * * that * * * the Rapcon Controller * * * failed to exercise reasonable care in the information which it furnished to the plaintiff * * * respecting the length of the Thun Field runway." Wenzel, supra, at 989. Appellant contends that the court's finding that plaintiff failed to sustain his burden of showing that defendant's negligence was a proximate cause of the accident is incorrect and should be overruled. He offers a two-pronged argument: First, that had the controller provided proper information, Wenzel would probably have proceeded back to McChord Air Force Base as was

---

1. Soon after the first runaway prop, Captain Wenzel had been successful in "feathering" the left engine; feathering is a technique whereby the blades of a propeller are turned to a position stream-lined with the plane so as to reduce excess drag.

2. The F.A.A. facility was unable to reach Thun Field by telephone, and the lights were not flashed.

his initial intention; and Second—presumably in the alternative—had the controller provided accurate information to the crew, a different approach and a successful landing at Thun Field could have been accomplished.[3] With respect to the assertion that the flight would have proceeded back to McChord but for the controller's mention of Thun Field, appellant urges that an alternative landing site which was inadequate for the landing of the plane should not have been even mentioned by the controller. It is obvious that the gist of appellant's second argument (i. e., that if proper information had been given to the crew, a successful landing could have been made at Thun), undercuts the thrust of the appellant's contention that Thun Field was an unsuitable alternative landing site. Further, in the existing serious emergency the controller's mention of the availability of Thun Field evidently was much appreciated by the distressed crew as without first inquiring about the field's characteristics, the crew immediately asked to have Thun Field flash its landing lights and requested a radar vector to Thun. Actually, the incorrect information about the length of the runway was received not only after a decision had already been made by the crew to land at Thun, but when in fact, the plane was just about three miles north of Thun Field. On this point the district court ruled:

"Assuming that the McChord control misinformed the plaintiff respecting the availability or suitability of Thun Field as a place to set down the aircraft, *I find no evidence that such misinformation was a proximate cause of the injuries of which complaint is made.*" (Emphasis supplied) 291 F. Supp. at 984.

The court found in effect, that if the runway at Thun was inadequate, " * * * the evidence is uncontradicted that the unsuitability of the airfield became or must have become obvious and apparent to the plaintiff * * * " [4] for Captain Wenzel, did, in fact, execute a successful mis-approach after flying down the field for some distance, did successfully turn left sharply off the airstrip,[5] and " * * * had regained substantial altitude and traveled a distance of a mile and a half from the airfield where it crashed in the course of its second turn." At 984. The court later stated:

"Whether the immediate cause of the crash was another runaway propeller or an explosion or too steep a banking turn too near the ground with wing tip contact with a ground obstruction is neither disclosed by nor to be inferred from the evidence in the case." At 985–986.

\* \* \* \* \* \*

"(The controller) * * * did nothing to control or influence the handling of the aircraft which was in the exclusive control and the primary responsibility of the plaintiff as pilot." At 986.

3. Appellant also suggests the trial court erred by not applying the substantive law of the State of Washington re: the standard of "proximate cause." Certainly, it is undisputed that under the Federal Tort Claims Act, the liability of the United States is to be determined " * * * in accordance with the law of the place *where the act or omission occurred.*" 28 U.S.C. § 1346(b). Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed. 2d 492 (1962). However, we are not convinced that the law of Washington State on. proximate cause is any more favorable to appellant than the cases of Wenninger v. United States, 234 F.Supp. 499 (D.Del.1964), aff'd. 352 F.2d 523 (3 Cir. 1965) ; and United States v. Schul-

tetus, 277 F.2d 322, 86 A.L.R.2d 375 (5 Cir. 1960), relied on by the court below. See, for example, Ferrin v. Donnellefeld, Wash., 444 P.2d 701 (1968) ; White v. Greyhound Corporation, 46 Wash.2d 260, 280 P.2d 670 (1955) ; Wilson v. Northern Pac. Ry. Co., 44 Wash.2d 122, 265 P.2d 815 (1954) ; and Gardner v. Seymour, 27 Wash.2d 802, 180 P.2d 564 (1947).

4. At 983.

5. The testimony clearly shows that in executing a mis-approach, the preferred technique is to fly straight over the runway for its entire length, and to climb slowly, rather than to turn sharply and climb suddenly which was what was done here.

Similarly, appellant's theory that a different approach would have been made to Thun if the correct landing strip information had been provided does not cure the primary defect found in his case by the court below, viz., the failure by the plaintiff to establish proximate cause. As indicated, Captain Wenzel evidently had discovered that the runway was not situated as he expected and that it was necessary to execute a mis-approach; but as also pointed out above, he *successfully* did execute a mis-approach, and after that crashed for some other unknown cause. The court below soundly concluded that:

> "The continuity of the chain of alleged causation between * * * (the controller's) misinformation respecting the length of the runway and the crash of the aircraft was broken by a series of events in no way chargeable to that misinformation." At 985.

There is no doubt that appellant had the burden of establishing both negligence and proximate cause in this claim in order to recover. Ferrin v. Donnellefeld, Wash., 444 P.2d 701, 702 (1968).[6] In White v. Greyhound Corporation, 46 Wash.2d 260, 280 P.2d 670, 672–673 (1955), the Supreme Court of Washington made it clear that proximate cause "* * * must be established by facts and legitimate inferences therefrom—not by speculation or conjecture." And where based on the evidence, under one theory of the suit the plaintiff would be liable,[7] and under another the defendant, the plaintiff has not met his burden. Gardner v. Seymour, 27 Wash.2d 802, 180 P.2d 564, 569 (1947). It should be noted in the appeal before us that, "In consequence of the long period of unconsciousness which he suffered following the crash plaintiff was unable to recall any of the events immediately preceding the crash * * *." Wenzel, supra, 291 F. Supp. at 982.

After exhaustively analyzing all of the evidence, the trial court rightly decided that:

> "Because of the absence of evidence respecting the events which transpired in the execution of the aircraft's go-round I am unable to reach a conclusion as to the cause of the crash * *. Speculation may not serve in lieu of evidence * * *." Wenzel, supra, at 988.

From our independent study of the trial record we are satisfied that the district court judgment is sound and right. It will be affirmed.

---

**6.** Undoubtedly the law of Washington governs this issue. See footnote 3, supra.

**7.** The court also held that there was insufficient evidence to sustain the Government's affirmative defense of contributory negligence. Wenzel, supra, 291 F. Supp. at 988.