Robert I. **SKETO** and Mildred B. Sketo, husband and wife, Plaintiffs-Appellees,

v.

**OLYMPIC FERRIES, INC.**, a Washington corporation, Defendant-Appellant.

No. 24598.

United States Court of Appeals, Ninth Circuit.

Dec. 24, 1970.

Rehearing Denied Jan. 18, 1971.

Frank W. Draper (argued), of Detels, Draper & Marinkovich, Seattle, Wash., for appellant.

Jerry Schumm (argued), of Merrick, Burgess & Hofstedt, Seattle, Wash., for appellees.

Before HAMLEY, KOELSCH and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Olympic Ferries appeals from a judgment against it for $16,606.03 aris-

ing out of a wrongful death action brought by the Sketos for the death of their minor son, Stanley. District court jurisdiction was based upon diversity of citizenship. Washington law applies. The sole contention of the appellant is that there was insufficient evidence to establish that its admitted negligence was the proximate cause of death. We affirm.

In the summer of 1967 the decedent and his parents were on a vacation trip through the Pacific Northwest in their pickup camper. Stanley, age 15, was a severe hemophiliac with a lengthy history of traumatically induced internal bleeding.

Having journeyed from southern California to Washington's Olympic Peninsula, the Sketos boarded appellant's ferry at Port Townsend on August 15, 1967, bound for Keystone. Mr. Sketo walked aboard while Mrs. Sketo and Stanley parked the camper on the car deck.

The lower level of the ferry included the car deck, surrounded by a platform or landing. The platform and car deck were constructed of wood planking with the surface of the platform about 8½ inches above the surface of the car deck. The platform and car deck had numerous white lines painted thereon causing a deceptive appearance of a single level which the district court characterized as "a trap." There were no warnings indicating the different levels.

When she drove the camper onto the car deck, Mrs. Sketo was instructed by ferry employees to park the camper on the right side of the car deck. Since there was another vehicle parked on their left, both Mrs. Sketo and Stanley left the camper from the passenger side. Because it was parked directly adjacent to the platform, both stepped directly onto the platform.

Leaving the car deck area, Mrs. Sketo and Stanley ascended to the upper deck to join Mr. Sketo for the ride to Keystone. Shortly before docking, Stanley and his mother returned to the lower

level in preparation for their departure. They descended the stairs leading to the car deck and stepped onto the platform surrounding it.

Mrs. Sketo walked toward the camper while Stanley headed off to her left, apparently to look out a porthole. He was momentarily out of his mother's view when she heard him fall. When she turned, he was lying face down on the car deck with his feet near the platform edge and his head pointed toward the side of the vessel.

Mrs. Sketo asked her son whether he was hurt. He replied, "No, I don't think so but *I never noticed the step.*" This is the only statement in the record by the decedent regarding the circumstances surrounding his fall.

After leaving the ferry, the Sketos continued on their trip north into Canada. Stanley became ill, languished, and died three days after his fall.

The case was tried without a jury. Though contested at the trial, the ferry company does not now contest the court's finding that the deceptive condition of the car deck and platform constituted negligence on its part.

Further, the company concedes that the medical evidence at the trial was sufficient to sustain the court's finding that the boy's death was caused by the fall. The argument here is that there is no showing that the admitted negligence of the appellant was the proximate cause of the fall which resulted in death.

Appellant relies heavily upon Gardner v. Seymour, 27 Wash.2d 802, 180 P.2d 564 (1947) for the proposition that the plaintiff has the burden of proof as to all elements of liability, including proximate cause, and that a verdict based upon speculation as to any element cannot stand.

*Gardner* involved a man who died following an unwitnessed fall down an elevator shaft. The evidence established that the elevator had not been provided with guard devices as required by state law. Since there were no witnesses to the accident, the court indicated that

there were two equally probable hypotheses. First, the decedent may have seen the improperly equipped elevator doors open, assumed the car was there, and walked into the open shaft. A second possibility was that he might have forced the doors open and attempted to pull the car down to his level by operating the cables (as other employees had been known to do) and lost his balance. Since the court viewed either hypothesis as equally probable under the evidence, it concluded that a finding of liability could not stand since it would necessarily be based upon speculation.

Applying *Gardner* to this case, appellant argues that the fall here was unwitnessed, that it could have been caused by either (1) the admitted negligence of the ferry company or (2) failure on the part of the decedent to observe his surroundings. Suggesting that either alternative is equally probable, appellant argues that the verdict here, like *Gardner,* is based upon impermissible speculation. *See also* Wright v. Wilson, 64 F.Supp. 694 (E.D.Pa.1945); Parmalee v. Chicago, M. & St. P. R. Co., 92 Wash. 185, 158 P. 977 (1916).

While we are not unimpressed by the logic of this argument, we are nevertheless convinced that the judgment here was properly based not on speculation but rather upon a permissible inference from the circumstantial evidence surrounding the death.

Unwitnessed fatal accidents have traditionally posed problems of proof for plaintiffs in wrongful death actions. "Difficulty in regard to proximate cause has arisen in some wrongful death actions where there were no witnesses to the accident and no direct evidence of the proximate cause of death. In such cases courts have admitted circumstantial evidence to enable the jury to arrive at a conclusion as to the proximate cause of death." Anno. 64 A.L.R.2d 1199, 1218.

Circumstantial evidence is clearly proper in Washington to support liability, including proximate cause, in negligence cases. "Circumstantial evidence is sufficient to establish a prima facie case of negligence, if it affords room for men of reasonable minds to conclude that there is a greater probability that the conduct relied upon was the proximate cause of the injury than there is that it was not." Wise v. Hayes, 58 Wash.2d 106, 108, 361 P.2d 171, 172 (1961).

We believe that there is ample circumstantial evidence here to support the trial court's implicit finding that the fall was proximately caused by the admitted negligence of the ferry company. There was evidence that the decedent was aware of the seriousness of his condition and of the need to exercise extreme caution to avoid traumas which could result in serious incidents of bleeding. Further, the testimony of his mother concerning his activities immediately before the fall does not indicate that he was running or distracted nor give support to appellant's argument that it is equally probable that he was inattentive or careless.

In addition, we note that the trial court specifically found that neither the decedent nor his parents had been guilty of contributory negligence. Appellant does not contest that finding and indeed it would be futile in the absence of any evidence to support contributory negligence.

In Washington, contributory negligence is an affirmative defense and the appellant had the burden of proof. *See,* e. g., McCully v. Fuller Brush Co., 68 Wash.2d 675, 415 P.2d 7 (1966).

The trial court's finding that the decedent was not guilty of contributory negligence amounts to a finding that, at the time of the fall, he was acting with reasonable care with an eye to his personal safety. This finding weighs heavily against appellant's argument that it is equally probable that he was inattentive at the time of his fall.

Finally, the situation here is distinguishable from *Gardner* in one substantial respect. While the fall here was in fact unwitnessed, we do not think that

this was an unwitnessed fall in the sense of the *Gardner* case.

In *Gardner*, there was no evidence of the conduct of the decedent prior to his fall. Indeed, the evidence did not show the floor of the building from which he fell. The evidence here traced the activities of the decedent until moments before he fell and fails to disclose any indication that he was other than cautious and attentive.

We are therefore convinced that there is ample "room for men of reasonable minds to conclude that there is a greater probability" that the negligence of the ferry company was the proximate cause of the boy's fall.

Affirmed.