[No. 31581-1-I.   Division One.   August 2, 1993.]

GEORGE FUJII, ET AL, *Appellants,* v. STATE FARM FIRE & CASUALTY COMPANY, *Respondent.*

*John S. Riper, Elizabeth Spencer,* and *Stanislaw, Ashbaugh, Riper, Peters & Beal,* for appellants.

*Marilee C. Erickson, William R. Hickman,* and *Reed McClure,* for respondent.

BAKER, J. — In the fall of 1990, heavy rainfall caused a landslide upslope from a house owned by George and Mitsie Fujii (the Fujiis). Noting continued instability of the slope in subsequent months, the Fujiis filed a claim under their homeowners insurance policy. State Farm Fire and Casualty Company (State Farm) denied coverage because the dwelling did not sustain a direct physical loss. The Fujiis sued, and now appeal the trial court's order granting State Farm's motion for summary judgment.

In support of its motion, State Farm submitted the affidavits of three professionals, each of whom concluded that the Fujii dwelling did not sustain a direct physical loss due to the landslide during the effective period of the policy. While there was agreement that such damage was likely to occur in the near future unless expensive preventative measures were taken, each professional concluded that no physical damage had yet occurred.

In response to State Farm's motion, the Fujiis argued there should be coverage because the landslide undermined the lateral support of the covered dwelling, and the loss of lateral support constituted a direct physical loss to the dwelling. The Fujiis submitted the declaration of a geotechnical engineer who concluded that the landslide damaged the "integrated engineering unit" of the covered dwelling, which consisted of the dwelling and its supporting land. The engineer did not opine that the dwelling itself had suffered any direct physical damage.

In granting State Farm's motion for summary judgment, the trial court concluded that there was no coverage because the landslide did not result in direct physical loss to the covered dwelling. The insurance policy provided in part:

SECTION 1 — COVERAGES
COVERAGE A — DWELLING
1. We cover:
a. the dwelling used principally as a private residence on the residence premises shown in the Declarations. This includes structures attached to the dwelling:
. . . .

Except as specifically provided in SECTION 1, ADDITIONAL COVERAGES, for Land, we do not cover land or any costs required to replace, rebuild, stabilize or otherwise restore the land.

. . . .

ADDITIONAL COVERAGES

. . . .

11. Land. We will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling sustaining a covered loss. This may increase the limit applying to the property.

. . . .

SECTION 1 — LOSSES INSURED

COVERAGE A — DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION 1 — LOSSES NOT INSURED.

This case is controlled by *Villella v. Public Employees Mut. Ins. Co.*, 106 Wn.2d 806, 725 P.2d 957 (1986). In that case, the insured sought to recover under two homeowners policies for damage to a dwelling sustained when the foundation of the house sank. The insured claimed that the foundation problem was caused by a defective drainage system, which caused progressive destabilization of the soil during the effective period of the first policy, issued by PEMCO. Although the actual damage to the structure occurred after the PEMCO policy expired, the insured claimed that the PEMCO policy covered the loss because the soil destabilization occurred during the policy period. *Villella*, 106 Wn.2d at 810-11.

The Supreme Court rejected this argument because the residence itself sustained no damage prior to the expiration date of the first policy. *Villella*, 106 Wn.2d at 811-12. In so holding, the court emphasized that in order to trigger coverage under a policy, the insured must sustain a covered injury or loss, however minute, during the effective period of the policy. *Villella*, 106 Wn.2d at 814.

■ In this case, it is undisputed that there was no discernible physical damage to the dwelling during the effective period of the policy. While the Fujiis' engineer concluded that

the integrated engineering unit had been damaged, he was not free to rewrite the plain terms of the insurance policy by defining "dwelling" in that manner. Under the plain terms of the policy, coverage was triggered by direct physical loss to the dwelling. Limited coverage for the cost of soil restabilization was provided only if the dwelling sustained a covered loss. Therefore, because the covered dwelling did not sustain a direct physical loss during the effective period of the policy, the trial court correctly granted summary judgment to State Farm.

The Fujiis next argue that the trial court's ruling contravenes the loss in progress doctrine. They contend that under the loss in progress doctrine, a subsequent insurer cannot be held liable for events certain to occur. Because the threat of loss to their dwelling is imminent, the Fujiis argue that their existing insurance will not cover any damage that occurs. Therefore, unless State Farm is liable, the Fujiis would shoulder the loss, a result which they contend is against public policy.

Under *Villella*, the question whether the loss in progress doctrine precludes coverage under an existing insurance policy has no bearing on State Farm's liability for losses sustained during the effective policy period. Therefore, because there was no direct physical loss to the covered dwelling during the policy period,[1] the trial court correctly ruled there was no coverage.

Affirmed.

COLEMAN and GROSSE, JJ., concur.

Review denied at 123 Wn.2d 1009 (1994).

---

[1] The Fujiis rely on *Gruol Constr. Co. v. Insurance Co. of North Am.*, 11 Wn. App. 632, 524 P.2d 427, *review denied*, 84 Wn.2d 1014 (1974), to support their loss in progress argument. *Gruol* is distinguishable, however, because there the damage to the structure caused by dry rot occurred during the policy period. *Gruol*, 11 Wn. App. at 636.