IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SUN VALLEY PLAZA, LLC, a Washington limited liability company, | ) ) ) | No. 33862-2-III |
| Appellant, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| ADMIRAL INSURANCE COMPANY, a corporation, | ) ) ) | |
| Defendant, | ) ) ) | |
| TERRIL, LEWIS & WILKE INSURANCE, INC. a Washington corporation, | ) ) ) ) | |
| Respondent. | ) ) | |

FEARING, C.J. — Appellant Sun Valley Plaza LLC sues Terril, Lewis, & Wilke Insurance Inc., its insurance agent, for allegedly failing to timely deliver a renewal insurance policy and allegedly failing to warn it of the need to maintain a burglar alarm on insured property. The trial court granted Terril summary judgment on the basis that Sun Valley failed to provide evidence that damage to the property occurred during the time of coverage under the renewal insurance policy procured by Terril. We affirm.

FACTS

Sun Valley owns hundreds of properties, including commercial real property throughout the city of Yakima. Beginning on November 1, 2010, Sun Valley leased to Del Matthews, at $1,500 per month, a four-acre area located on 1408 S. First Street, Yakima, for purposes of an open air market. Two buildings, labeled respectively as an indoor flea market and shops, rested on a small section of the leased property. Sun Valley owns other land and buildings, with a First Street address, adjacent to the leased four acres.

Megalodon LLC, a property management company, managed Sun Valley's Yakima property. Larry Hull is owner and manager of both Sun Valley and Megalodon. Megalodon employed Caroline Nava as a residential property manager with responsibilities of procuring insurance for Sun Valley properties.

In 2011, Megalodon faced difficulty securing insurance for Sun Valley's property along First Street because the prior insurer, Farmers, declined to renew its policy after a three million dollar claim for fire damage on the property. Caroline Nava worked with insurance agent Aaron McCoy, employee of Terril, to procure new property insurance. McCoy secured a policy through Admiral Insurance Co.

The Admiral policy covered the period from September 15, 2011, to September 15, 2012. The policy blanketed eight buildings at 1416 S. First Street, Yakima, and one building at 1402 S. First Street, Yakima. The occurrence insurance policy covered theft

and vandalism. We note that, according to the lease, Del Matthews rented a portion of 1408 S. First Street, which address is not covered by the policy. A Google map suggests that Matthews leased 1416, not 1408, First Street. There is also confusion in the record as to whether the damaged property, for which Sun Valley sought recovery, is the property leased to Matthews or adjoining property. Nevertheless, Terril does not argue, at least for purposes of its summary judgment motion, that damage to the property would be covered by the Admiral policy if Sun Valley maintained the needed burglar alarm system. We will refer, in this opinion, to the leased property and the damaged property as 1408 First Street.

Aaron McCoy later assisted Caroline Nava with renewing the Admiral insurance policy. The renewed policy covered the period September 15, 2012, to September 15, 2013. The renewal policy required the installation and maintenance, on sections of the insured property, of an automatic burglar alarm that signaled to an outside central station. The earlier policy required an alarm system for a more limited area on the property.

Del Matthews' lease was set to terminate on November 30, 2012, a month and a half after commencement of the renewal insurance policy. During September and early October 2012, Matthews and Larry Hull discussed renewal of the lease. In September 2012, Matthews failed to pay $100 of the rent. Matthews failed to pay his entire October rent of $1,500. Matthews also permitted code violations on the property that prompted

3

the city of Yakima to send a violation notice to Sun Valley and Matthews. Hull then decided not to renew the lease.

On October 17, 2012, Sun Valley served Del Matthews with a ten-day notice to pay rent or vacate the premises. Matthews requested additional time to move, but Larry Hull, on behalf of Sun Valley, rejected the request. In a phone call to a Megalodon employee, Matthews then threatened to kill Hull and other staff members of Megalodon. A concerned Hull relented and agreed to allow Matthews to remain in the building until October 30.

On October 31, 2012, Sun Valley initiated an eviction suit against Del Matthews because Matthews had not vacated the property at 1408 S. First Street. Matthews still owed $1,815 in rent, late fees, and service fees. Matthews left the premises on November 1, 2012.

Within days of Del Matthews vacating 1408 S. First Street, Megalodon employee Caroline Nava inspected and discovered significant damage to the property. On November 5, 2012, Larry Hull also inspected the property and confirmed damage. Someone cut holes in walls, stripped and stole wiring from behind walls, purloined toilet fixtures, and damaged shower rooms. The loss occurred in three separate buildings, two of which required, but lacked, central system burglar alarms. Hull owned many properties, formerly held a general contractor license, and knew construction and

4

demolition. Hull concluded that the damage to the building could have been accomplished in a few days.

Up to and through September 15, 2012, Caroline Nava had no knowledge of any damage to the property. She received no reports of damage from the tenant, law enforcement, the fire department, or code enforcement officials. Pacific Power, who supplied electricity to the building, had not reported any problems at the property.

Before September 15, 2012, Larry Hull often drove by 1408 S. First Street. He did not enter the property, but could see the property from the street. Hull noticed no damage or unusual activity on the leased premises. No employee of Sun Valley or Megalodon entered the property since at least May 2012.

Sun Valley submitted a claim to Admiral for damage to the property. Admiral denied the claim on the basis that Sun Valley did not maintain burglar alarms as required by the renewal insurance policy.

## PROCEDURE

Sun Valley sued Admiral and Terril for vandalism damage occurring on November 5, 2012. Sun Valley's action requested damages from Admiral for breach of the insurance policies, bad faith, and violation of the Washington Consumer Protection Act, chapter 19.86 RCW. Sun Valley alleged against Terril that the insurance agency failed to notify Sun Valley of an additional burglar alarm system requirement in the 2012 renewal policy and that Terril failed to timely deliver the 2012 renewal policy so that Sun

5

Valley could read the policy and notice the requirement. Sun Valley apparently recognizes that it cannot recover under the first policy, which covered September 15, 2011 to September 14, 2012, because it timely had the 2011 insurance policy and could read any requirement for a burglar alarm system.

Terril defends, in part, on the ground that Sun Valley cannot establish that the damage occurred during the renewal policy term of September 15, 2012 to September 15, 2013. Stated differently, according to Terril, any alleged breach of the failure to warn of changes or to timely deliver the 2012 renewal policy could not cause damage to Sun Valley if the vandalism and theft occurred before September 15, 2012. Terril further argued that Sun Valley could not show that the damage occurred after September 15, 2012. Sun Valley concedes Terril's position that Sun Valley must show the vandalism occurred after September 15, 2012, but argues that a trier of fact could reasonably conclude that the vandalism occurred after that date.

During a deposition, Larry Hull, owner of Sun Valley, testified:

> Q. Do you have any idea when [the damage] was done?
> A. No.
> Q. Okay. It could have been done a month before, for all you know; is that correct?
> A. It, it could have been done during the first policy rather than the second one, yes.
> Q. Okay.
> A. Because the policies changed from September 15th, each September 15th, so if the, if the damage, if we, if we called the claim in around the [First] of November, it would only be a month and a half and then you would be back to the first policy.

6

Q. Okay.
A. So if, if it did take him a long time, then they would actually be operating under the first policy rather than the second one.

Clerk's Papers (CP) at 39.

Caroline Nava testified, during her deposition:

Q. Ms. Nava, do you have any information about when the actual theft and vandalism occurred? You were out there with Aaron and Larry and these others and the code enforcement guy but do you know when the actual theft occurred?
A. No.

CP at 87-88.

Terril moved for summary judgment and argued that Sun Valley cannot prove its claim because it has no evidence that the damage occurred during the policy period of the renewal Admiral insurance policy. Sun Valley responded by contending a material issue of fact existed as to when the property damage occurred. Sun Valley contended that the trier of fact can infer from the evidence that damage occurred after September 15, 2012. The trial court granted summary judgment dismissal of Sun Valley Plaza's claim because it only presented speculative evidence of an essential element of its case that the loss occurred during the second policy period.

## LAW AND ANALYSIS

Sun Valley contends the trial court erred in dismissing its failure to notify claim against Terril. It argues that it presented circumstantial evidence from which a reasonable person could conclude that the property damage occurred on or after

7

September 15, 2012. Terril responds that summary judgment was proper because there is no evidence of when the damage occurred. We agree with Terril.

As a preliminary issue, Terril requests this reviewing court reject, under RAP 10.3(a), what it characterizes as Sun Valley Plaza's unsubstantiated arguments. Terril observes that the argument section of Sun Valley's brief contains no citations to the record or to legal authority. RAP 10.3(a)(6) describes an appeal brief's argument section as:

> The argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record.

The second sentence in RAP 10.3(a)(5), which subsection concerns the brief's statement of the case or facts, demands that "[r]eference to the record must be included for each factual statement."

In the argument section of its brief, Sun Valley lists eighteen facts that it avows create an issue of fact, but it does not provide a citation to the record for any of the facts. Sun Valley may thereby technically disregard the directives of RAP 10.3(a)(6). Nevertheless, Sun Valley followed the dictates of RAP 10.3(a)(5) and included citations to the clerk's papers for all facts asserted in its statement of the case.

RAP 1.2 declares:

> **(a) Interpretation.** These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance

8

with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).

. . . .

**(c) Waiver**. The appellate court may waive or alter the provisions of any of these rules in order to serve the ends of justice, subject to the restrictions in rule 18.8(b) and (c).

Assuming RAP 10.3(a)(5) demands citations to the record for facts analyzed in the brief's legal analysis, despite citation to the record for those same facts in the statement of the case, we waive the requirement in this appeal. We can readily determine the validity of the facts, on which Sun Valley relies in its legal argument, by reviewing citations in the statement of the case. Terril shows no prejudice by any violation of the rule.

Sun Valley emphasizes the following facts in an effort to defeat Terril's summary judgment motion:

1. Shortly after September 15, 2012, tenant Del Matthews began negotiations to extend or renew his lease beyond its termination date of November 30, 2012;
2. Del Matthews defaulted on the rent;
3. No one reported damage to the property before September 15, 2012;
4. Larry Hull and at least one other employee of Megalodon drove by the property on a frequent basis and did not observe any damage or unusual activity at the property before September 15, 2012;
5. Larry Hull told Del Matthews that he would not extend the lease;
6. On October 16, 2012, Del Matthews was given a ten-day notice to pay rent or vacate the premises;
7. Del Matthews requested and was denied additional time to leave the premises;
7. Del Matthews threatened harm to Hull and other Megalodon employees;
8. In the opinion of Larry Hull, vandals could have performed the harm in a few days; and

9

9. The vandals took copper wire to the extent that the property could not obtain electricity, but yet Del Matthews, until October 2012, wanted to continue with business on the premises.

We agree with the trial court that these facts alone do not create an issue of fact as to the vandalism occurring after September 14, 2012.

In an opinion addressing an appeal from a grant of summary judgment, we normally recite principles of summary judgment without little thought. In this appeal, some of those principles are critical to the outcome.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Ranger Insurance Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008); *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974). In a summary judgment motion, the burden is on the moving party to demonstrate that there is no genuine issue as to any material fact and that, as a matter of law, summary judgment is proper. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

The law renders an important distinction between summary judgment motions brought by the party with the burden of proof on an issue and a party defending on that issue. This distinction looms important in this appeal. For instance, a defendant may

move for summary judgment by showing that there is an absence of evidence to support the plaintiff's case. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989); *Sligar v. Odell*, 156 Wn. App. 720, 725, 233 P.3d 914 (2010). Stated differently, a party moving for summary judgment can meet its burden by pointing out to the trial court that the nonmoving party lacks sufficient evidence to support its case. *Guile v. Ballard Community Hospital*, 70 Wn. App. 18, 21, 851 P.2d 689 (1993). A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The substantive law of insurance bolsters these summary judgment principles. In order to trigger coverage under a property policy, the insured must sustain a covered injury or loss, however minute, during the effective period of the policy. *Truck Insurance Exchange v. BRE Properties, Inc.*, 119 Wn. App. 582, 588, 81 P.3d 929 (2003); *Fujii v. State Farm Fire & Casualty Co.*, 71 Wn. App. 248, 250, 857 P.2d 1051 (1993). The plaintiff's evidence must establish that there is a greater probability that the thing in question, such as the occurrence of an insured event, happened in such a way as to fix liability on the person charged therewith. *Gardner v. Seymour*, 27 Wn.2d 802, 808-09, 180 P.2d 564 (1947). The plaintiff must present proof sufficient to allow a reasonable person to conclude that the harm, more probably than not, happened in such a way that the moving party should be held liable. *Little v. Countrywood Homes, Inc.*, 132 Wn.

11

App. 777, 781, 133 P.3d 944 (2006). An insured cannot rely on speculation or guesswork. *Baroco West, Inc. v. Scottsdale Insurance Co.*, 110 Cal. App. 4th 96, 104, 1 Cal. Rptr. 3d 464 (2003).

A second critical summary judgment principle for purposes of this appeal is that an affidavit does not raise a genuine issue for trial unless it sets forth facts evidentiary in nature—that is information as to what took place, an act, an incident, a reality as distinguished from supposition or opinion. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988); *Vacova Co. v. Farrell*, 62 Wn. App. 386, 395, 814 P.2d 255 (1991). A fact is an event, an occurrence, or something that exists in reality. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d at 359. We have no facts presented as to who vandalized the insured property and the date or dates of the sabotage. Sun Valley bases its conclusion that the destruction occurred after September 14, 2012 on the premise that Del Matthews or someone on his behalf performed the criminal act. Nevertheless, no one testifies that Matthews or an associate caused the harm. Megalodon reported the vandalism to the police, but we have no officer testifying to an investigation of the crime.

We do not know if expert testimony could help in discerning the date of the vandalism. At any rate, no expert professes that, after reviewing the evidence of destruction, he or she is capable of dating the damage. Larry Hull may seek to qualify himself as an expert in damage to buildings. He testifies that the vandals could have

12

wreaked the damage in a few days, but he does not opine that the damage likely occurred after September 14, 2012.

Sun Valley accentuates that, before September 15, 2012, no one reported damage to the leased property. Larry Hull and other Megalodon employees frequently traveled by the property and noticed no damage. From this evidence, Sun Valley extrapolates that the damage likely did not occur before September 15, 2012. Nevertheless, no evidence suggests that any of the destruction could have been seen by one driving by the property.

We note that no one reported damage between September 15, 2012 and the discovery of the damage in November 2012. Larry Hull did not testify that he stopped driving by the property after September 15, 2012. Therefore, he likely journeyed by the leased premises frequently between September 15 and early November 2012. Under Sun Valley's reasoning, the vandalism must not have occurred between September 15 and November 2012 because no one reported damage during that period and Hull and other employees saw no destruction during that timeframe.

One principle favors Sun Valley. When ruling on a motion for summary judgment, the court will view the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Magula v. Benton Franklin Title Co.*, 131 Wn.2d 171, 182, 930 P.2d 307 (1997). An inference is a process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted. *Fairbanks*

*v. J.B. McLoughlin Co.*, 131 Wn.2d 96, 101-02, 929 P.2d 433 (1997); *Shelby v. Keck*, 85 Wn.2d 911, 914-15, 541 P.2d 365 (1975).

Sun Valley asserts a more compelling argument when it emphasizes Del Matthews' threatening of Larry Hull and others after September 15, 2012 and after Hull refused an extension of Matthews' stay on the insured premises. Although Hull does not testify that, based on these facts, Matthews likely wrecked the premises after September 15, 2012, Sun Valley argues that a jury could draw a reasonable inference that Matthews caused the damage and the damage occurred after the threat to kill. We must ask whether a threat to kill creates a reasonable inference that one would despoil the property of the threatened person shortly after the threat.

We conclude that a damage to property does not logically follow from a threat to kill. Although hostility may engender both, the two acts are distinct in nature. The law does not presume a criminal act by one, just because one engaged in another criminal act. We have little information about Del Matthews. To our knowledge, neither party deposed Matthews. We know scant details of the threat. Matthews may have possessed a motive to vandalize the premises, but having a motive does not qualify one as the likely culprit of a crime. In short, a trier of fact would need to guess, based on the lack of any percipient evidence, that Del Matthews wreaked the damage.

Sun Valley maintains that circumstantial evidence creates a question of fact. We disagree under these circumstances. Circumstantial evidence does not negate the

14

distinction between that which is mere conjecture and what is a reasonable inference. *Gardner v. Seymour*, 27 Wn.2d at 808-09; *Home Insurance Co. of New York v. Northern Pacific Railway Co.*, 18 Wn.2d 798, 802-03, 140 P.2d 507 (1943).

A third critical rule, adopted for a jury trial, is that, if there is nothing more tangible to proceed on than two or more conjectural theories under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture. *Gardner v. Seymour*, 27 Wn.2d at 802 (1947). A verdict cannot be founded on mere theory or speculation. *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 379, 972 P.2d 475 (1999). This same principle should apply to summary judgment jurisprudence, since in each instance the court is faced with determining whether a jury can resolve a dispute.

The deposition testimony of Larry Hull confirms the propriety of the summary judgment dismissal of Sun Valley's suit. Hull testified that he did not know the date of the vandalism. He agreed the damage could have occurred during the first policy. A fourth and final principle, on which we rely, is: when a party renders clear answers to unambiguous deposition questions which negate the existence of any genuine issue of material fact, the party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previous testimony. *Klontz v. Puget Sound Power & Light Co.*, 90 Wn. App. 186, 192, 951 P.2d 280 (1998).

15

No. 33862-2-III
*Sun Valley Plaza LLC v. Admiral Insurance Co.*

CONCLUSION

We affirm the trial court's summary judgment dismissal of Sun Valley's suit against Terril.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Siddoway, J.                    Pennell, J.