# NOTICE: SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 25, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 25, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| HILL AND STOUT, PLLC, a Washington company, )<br><br>Appellant, )<br><br>v. )<br><br>MUTUAL OF ENUMCLAW INSURANCE COMPANY, a Washington insurance company, )<br><br>Respondent. ) | No. 100211-4<br><br>En Banc<br><br>Filed: <u>August 25, 2022</u> |

WHITENER, J.—In early 2020, to help curtail the spread of COVID-19[1] (coronavirus disease 2019), Governor Inslee issued Proclamation 20-24 (Proclamation), https://www.governor.wa.gov/sites/default/files/20-24%20COVID-19%20non-urgent%20medical%20procedures%20%28tmp%29.pdf?utm_medium=email&utm_source=govdelivery [https://perma.cc/BM69-Q3MY], prohibiting nonemergency dental care. This case concerns lost business income from the Proclamation and the

---

[1] "COVID-19, a respiratory disease that can result in serious illness or death, is caused by the SARS-CoV-2 virus, which is a new strain of coronavirus that had not been previously identified in humans and can easily spread from person to person." Proclamation 20-05, https://www.governor.wa.gov/sites/default/files/proclamations/20-05%20Coronavirus%20%28final%29.pdf [https://perma.cc/TAF6-QNGB].

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

interpretation of an insurance contract under which the insurance company covers lost business income for the "direct physical loss of or damage to Covered Property" and excludes coverage for loss or damage caused by a "virus." Clerk's Papers (CP) at 349, 365, 368.

Drs. Sarah Hill and Joseph Stout are dentists who operate two dental offices under their business Hill and Stout PLLC (HS). HS bought a property insurance policy from Mutual of Enumclaw Insurance Company (MOE) that covers business income lost due to "direct physical loss of or damage to" the properties. The policy also included a virus exclusion that reads MOE "will not pay for loss or damage caused directly or indirectly by" "[a]ny virus . . . that induces or is capable of inducing physical distress, illness or disease." CP at 365, 368. HS sued MOE for coverage because of its inability to use its offices for nonemergency dental practice under the Proclamation and later amended to add a putative class action.

MOE moved to dismiss, arguing that HS failed to show a "direct physical loss of or damage to" the property and that the virus exclusion applied. The trial court denied the motion. After discovery, a different trial court judge granted summary judgment in favor of MOE, finding that "direct physical loss of or damage to property" is not ambiguous and does not cover the constructive loss of property under the Proclamation. In addition, the trial court held that the virus exclusion

2

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

applied and that the efficient proximate cause rule did not apply in this case. HS appealed directly to this court.

We affirm the trial court order granting summary judgment in favor of MOE. It is unreasonable to read "direct physical loss of . . . property" in a property insurance policy to include constructive loss of intended use of property. Such a loss is not "physical." Accordingly, the Proclamation did not trigger coverage under the policy.

In addition, although we need not reach it, we address the issue of efficient proximate cause as the parties have briefed the issue and it is likely to reoccur given the number of insurance cases associated with COVID-19. In the present case, we hold that there are no issues of material fact and that COVID-19 initiated the causal chain that led to the Proclamation and the cause of any alleged loss of use of the property. Because the causal chain was initiated by COVID-19, we hold that the virus exclusion applies to exclude coverage and that the efficient proximate cause rule does not mandate coverage.

FACTS AND PROCEDURAL HISTORY

HS operates two dental practices, one in Oak Harbor and one in Anacortes. HS purchased property insurance from MOE to cover both properties, one policy running from January 1, 2019 to December 31, 2019 and the other running from January 1, 2020 to December 31, 2020. Under "Section I – Property" of the

3

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

applicable policy, HS has coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." CP at 57. The policy then goes on to list the types of buildings and items that are "Covered Property" under the contract, as well as "Property Not Covered." *Id*. at 57-58.

The policy also covers business interruption and loss of income and provides that MOE,

> will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by *direct physical loss of or damage to property at the described premises*. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id*. at 62 (emphasis added).

In the Washington specific portion, as to exclusions, the policy is modified to read,

> We will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:
>
> a. Directly and solely results in loss or damage; or
>
> b. Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

*Id*. at 110. The most pertinent exclusion to this case is the "Virus or Bacteria" exclusion, which excludes coverage for loss or damage due to "[a]ny virus,

4

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id*. at 76. Virus exclusions, akin to the one in this case, came to fruition in the wake of the SARS (severe acute respiratory syndrome) virus outbreak in the early 2000s. *See* Erik S. Knutsen & Jeffrey W. Stempel, *Infected Judgment: Problematic Rush to Conventional Wisdom and Insurance Coverage Denial in a Pandemic*, 27 CONN. INS. L.J. 185, 196 (2020) ("the insurance industry had a virus and bacteria exclusion approved by regulators for inclusion in property insurance policies in 2006, in direct response to the SARS virus (though this exclusion is not featured in all property policies)").

In January 2020, Washington saw its first confirmed case of COVID-19. In the wake of the spread of COVID-19, Governor Inslee declared a state of emergency and issued multiple proclamations related to health, safety, and curtailing the spread of COVID-19. *See, e.g.*, Proclamation 20-05 (declaring a state of emergency on February 29, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-05%20Coronavirus%20%28final%29.pdf [https://perma.cc/TAF6-QNGB].

On March 16, 2020, Drs. Hill and Stout decided that they would close their practice on March 18. CP at 511. On March 18, 2020, HS ceased all routine dental procedures. *Id*. Dr. Hill testified this was because

> we knew that the governor was making proclamations and was trying
> to keep our state safe, and that there were—that there were more and

5

more closures and strictures. We knew [the shutdown] was coming that [the governor] was going to close. And so we preemptively did it a day before.

CP at 490, 508. She also testified that the decision to close was because of the forthcoming proclamation and "uncertainty about coronavirus." *Id*. at 511.

On March 19, 2020, Governor Inslee issued the Proclamation, limiting the practice of dentistry to only emergency procedures. The Proclamation reads, in pertinent part,

> WHEREAS, the health care personal protective equipment supply chain in Washington State has been severely disrupted by the significant increased use of such equipment worldwide, such that there are now critical shortages of this equipment for health care workers. To curtail the spread of the COVID-19 pandemic in Washington State and to protect our health care workers as they provide health care services, it is necessary to immediately prohibit all hospitals, ambulatory surgery centers, and dental, orthodontic and endodontic offices in Washington State from providing health care services, procedures and surgeries that require personal protective equipment, which if delayed, are not anticipated to cause harm to the patient within the next three months.

This Proclamation was in effect until May 18, 2020. In the meantime, HS continued to perform urgent dental procedures in both offices, as allowed under the Proclamation during this time period. HS also had receptionists in the offices to be able to answer calls from patients and reschedule appointments.

In April 2020, HS filed a complaint seeking declaratory judgment that the applicable insurance policies cover HS's "losses and expenses resulting from the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

interruption of [its] business." CP at 3. HS claimed that its "property sustained direct physical loss or damage as a result of the proclamations and orders." *Id*. at 2.

HS later amended the complaint to be a class action on its own behalf and those similarly situated. MOE moved to dismiss under CR 12(b)(6), arguing that the Proclamation did not result in loss of or damage to the covered property. Further, MOE claimed that the virus exclusion excluded coverage for claims related to COVID-19.

Judge Amini denied the motion to dismiss. In doing so, Judge Amini reasoned, applying a plain and ordinary meaning to the disputed words, that "'loss'" means "'destruction', 'ruin', 'deprivation'." CP at 285. Applying the definition of "deprivation," she found that HS had alleged a "'direct physical deprivation.'" *Id*. She found the phrase "direct physical loss" to be ambiguous, and she found that MOE's argument that there must be a physical alteration to the property meant the same as "damage." If this were true, then one phrase would be "surplusage," as the court must give meaning to all language in the contract. *Id*. at 286. After the motion to dismiss, the case was transferred to Judge Chung.

After the case was transferred, MOE filed a motion for judgment on the pleadings, arguing that HS did not allege "'direct physical loss of or damage'" to the property and, in the alternative, that the virus exclusion applied. CP at 308. Judge

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Chung denied the motion on procedural grounds without reaching the merits as MOE had not filed an answer.[2] The case proceeded to discovery.

After discovery MOE moved for summary judgment. MOE alleged again that the policy excludes coverage for losses related to a virus and for compliance with an ordinance regulating the use of property. In addition, MOE alleged that there was no coverage because there was no direct physical loss of property. Judge Chung granted the motion, finding

> that the coverage language requires some external force that causes alteration or direct physical change to the covered properties, the Court also finds that there is no coverage under the civil authority clause of the policy because that coverage is also premised on "when a covered cause of loss causes damage to property," i.e., the same direct physical loss.

CP at 988. Further, the court rejected HS's argument that a jury must decide whether COVID-19 or the Proclamation were the efficient proximate cause of the loss. In doing so, the court reasoned that the chain of causation was clear (that COVID-19 caused the governor to issue the Proclamation), and found "the [policy] language to be excluding, and that it avoids the efficient proximate cause doctrine in this case." *Id*. at 989.

---

[2] The motion or order denying the motion does not appear to be in the record, although the oral argument on the motion is an exhibit to the motion for summary judgment.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

HS appealed the order granting summary judgment directly to this court, and we retained the case for hearing and decision.[3]

ANALYSIS

## I.   Standard of Review

When reviewing a summary judgment order, "[w]e engage in the same inquiry as the superior court." *Lakehaven Water & Sewer Dist. v. City of Federal Way*, 195 Wn.2d 742, 752, 466 P.3d 213 (2020). "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing CR 56(c)). "In reviewing a motion for summary judgment, all facts and reasonable inferences are reviewed in the light most favorable to the nonmoving party." *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 485, 258 P.3d 676 (2011). "On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court."[4] RAP 9.12.

---

[3] There are eight amici briefs in this case. Six in support of appellants: National Independent Venue Association; the Tulalip Tribes of Washington and Tulalip Gaming Organization; Snoqualmie Indian Tribe; United Policyholders; Upper Skagit Indian Tribe, Muckleshoot Indian Tribe, and Professional Recreation Organization Inc.; and the Washington Hospitality Association. Two in support of Respondents: American Property Casualty Insurance Association and National Association of Mutual Insurance Companies; and Washington International Insurance Company.

[4] There is much discussion in the amicus briefs on the issue of whether presence of COVID-19 itself can cause physical alteration to a property such that the *virus* causes physical loss of or damage to the property. *See, e.g.*, Br. of Amicus Curiae Nat'l Indep. Venue Ass'n in Supp. of Appellant at 4-26; Br. of Amicus Curiae Wash. Int'l Ins. Co. at 8-16. Because HS is not bringing its insurance claim under this theory of coverage we decline to consider this issue.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

II.    Interpretation of the Insurance Policy and "Direct Physical Loss of" Property

"We interpret insurance policy provisions as a matter of law." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). "The insured bears the burden of showing that coverage exists; the insurer, that an exclusion applies." *Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 165 Wn.2d 255, 268, 199 P.3d 376 (2008). We construe the policy as a whole "so that the court can give effect to every clause in the policy." *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 575, 964 P.2d 1173 (1998). "When we construe the language of an insurance policy, we give it the same construction that an 'average person purchasing insurance' would give the contract." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007) (quoting *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990), *overruled on other grounds by Butzberger v. Foster*, 151 Wn.2d 396, 89 P.3d 689 (2004) (plurality opinion)).

Undefined terms in an insurance contract are given their "'plain, ordinary, and popular meaning.'" *Zhaoyun Xia v. ProBuilders Specialty Ins. Co. RRG*, 188 Wn.2d 171, 182, 400 P.3d 1234 (2017) (quoting *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627, 881 P.2d 201 (1994)). "[I]f the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists." *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). "We will hold that a clause is

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

ambiguous only "'"when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable."'" *Id*. (quoting *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 666, 15 P.3d 115 (2000) (quoting *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 427-28, 951 P.2d 250 (1998))). Any ambiguity in an insurance policy is construed in favor of the insured. *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 512, 276 P.3d 300 (2012). "[W]here multiple reasonable definitions of an undefined term in an insurance policy exist . . . courts adopt the definition that most favors the insured." *McLaughlin v. Travelers Com. Ins. Co.*, 196 Wn.2d 631, 642, 476 P.3d 1032 (2020).

The primary issue in this case is the interpretation of the phrase "direct physical loss of or damage to Covered Property." HS contends that "'[d]irect physical loss' of property can reasonably be interpreted to include the loss of the ability to use property or suffering the 'deprivation' of such property." Br. of Appellant at 17. Judge Amini agreed that this was a reasonable reading of the policy and denied the motion to dismiss. CP at 285-86. However, at this point the court did not have the benefit of discovery.

In contrast, MOE contends that coverage "requir[es] that something physically happen to covered property, but as Hill & Stout itself admits, nothing happened to its property." Resp't's Br. at 10. Judge Chung, in granting summary judgment, agreed, finding that the policy language is not ambiguous "because the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

coverage language requires some external physical force that causes direct physical change to the properties." CP at 988. We agree with MOE and affirm the superior court's order granting summary judgment in favor of MOE.

All of the key terms in this policy are undefined, so we look to their dictionary definitions. "Physical" is defined as "of or belonging to all created existences in nature" and "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1706 (2002). "Loss" is defined most pertinently as "the act or fact of losing : failure to keep possession : DEPRIVATION" and "the state or fact of being destroyed or placed beyond recovery." *Id.* at 1338. It follows that a "physical loss of . . . property" is a property that has been physically destroyed or that one is deprived of in that the property is no longer physically in their possession.

HS contends that "whatever else 'direct physical loss' can also mean, it must include a physical deprivation of property that immediately results from some non-excluded cause." Br. of Appellant at 18. We agree. However, HS goes on to say, "HS showed this occurred: it was physically *deprived* of the use of its business property as an immediate result of Governor Inslee's proclamations." *Id.* (emphasis added).

"Deprive" is defined as "to take away : REMOVE, DESTROY," "to take something away from," and "to keep from the possession, enjoyment, or use of

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

something." WEBSTER'S, *supra*, at 606. HS's argument has some merit because there is an aspect of "deprive" that is "to keep from the use," but this phrase must be looked at in the context of the policy language. Substituting "to keep from the use" the pertinent language would read, "direct physical keeping from the use of property." HS is correct that it was kept from using its property as it intended. However, it is not reasonable to say that the Proclamation *physically* kept HS from using its property, especially when HS was *using* its property.

Accordingly, under the facts of this case we hold that the claim for loss of intended use and loss of business income is not a *physical* loss of property. HS was still able to *physically* use the property at issue. The property was in HS's possession, the property was still functional and able to be used, and HS was not prevented from entering the property. Under the Proclamation, HS was not able to use the property in the way that it wanted, but this alleged "loss" is not "physical." It is more akin to an abstract or intangible loss than a "physical" one.

HS urges this court to apply a "loss of functionality test" instead of requiring that there be a physical alteration to the property. Br. of Appellant at 40. HS relies on *Port Authority of New York & New Jersey v. Affiliated FM Insurance Co.*, 311 F.3d 226, 231 (3d Cir. 2002), which concerned insurance coverage for asbestos contamination. The United States Court of Appeals for the Third Circuit agreed with the district court that

> "physical loss or damage" occurs only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property *such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility*. The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage.

*Id.* at 236 (emphasis added). Without evidence of an "'imminent threat of asbestos contamination'" there could be no coverage. *Id.*; *see also W. Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52 (1968) (holding coverage for direct physical loss triggered under "loss of use" when authorities ordered a building be closed because gasoline fumes inside the structure made the use of the building unsafe); *Murray v. State Farm Fire & Cas. Co.*, 203 W. Va. 477, 493, 509 S.E.2d 1 (1998) (holding plaintiffs suffered a "'direct physical loss'" when "all three of the plaintiffs' homes became unsafe for habitation, and therefore suffered real damage when it became clear that rocks and boulders could come crashing down [on the homes] at any time."). Our Court of Appeals, Division Two, has similarly found coverage for vandalism for the residue and vapors from a methamphetamine lab in a rental property even though it caused "no visible damage." *Graff v. Allstate Ins. Co.*, 113 Wn. App. 799, 806, 54 P.3d 1266 (2002).

We agree with HS that there are likely cases in which there is no physical *alteration* to the property but there is a direct physical loss under a theory of loss of functionality. However, this case is not one of them. Under a loss of functionality

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

test HS's claim also fails because there is no *physical* loss of functionality to the *property*. Contrary to the cases cited in HS's brief, in this case, there was no alleged imminent danger to the property, no contamination with a problematic substance, and nothing that *physically* prevented use of the property or rendered it useless; nor were the dental offices rendered unsafe or uninhabitable because of a dangerous physical condition. Accordingly, the Proclamation did not *physically* cause a loss of functionality of the property because it continued to be functional.

Furthermore, although Washington courts have not examined this phrase in relation to COVID-19 proclamations, our courts have recognized that in order to recover under a property insurance policy for physical loss of or damage to the property, something *physically* must happen to the property. In *Wolstein v. Yorkshire Insurance Co.*, 97 Wn. App. 201, 211, 985 P.2d 400 (1999), Division One of the Court of Appeals, looked at a hull risk policy that covered "'all risks of physical loss of or damage to the Vessel.'" The court held that "the insured object must sustain actual damage or be physically lost to invoke hull risks coverage." *Id*. at 212. Therefore, a delay in the construction of the boat was not covered because the boat was not damaged or lost. *Id*.

Similarly, in *Fujii v. State Farm Fire & Casualty Co.*, 71 Wn. App. 248, 250, 857 P.2d 1051 (1993), Division One of the Court of Appeals, looked at a policy that covered "'accidental direct physical loss.'" It was undisputed that there was "no

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

discernible physical damage to the dwelling during the effective period of the policy." *Id*. Relying on *Villella v. Public Employees Mutual Insurance Co.*, 106 Wn.2d 806, 808, 725 P.2d 957 (1986), the court held that "because the covered dwelling did not sustain a direct physical loss during the effective period of the policy, the trial court correctly granted summary judgment to State Farm." *Fujii*, 71 Wn. App. at 251.

Relying on these cases, the Western District of Washington recently examined multiple consolidated COVID-19 related insurance policy claims and granted multiple insurers' dispositive motions, all evaluated under FRCP 12(b)-(c). *Nguyen v. Travelers Cas. Ins. Co. of Am.*, 541 F. Supp. 3d 1200 (W.D. Wash. 2021). In *Nguyen*, Judge Rothstein acknowledged in her order that Washington superior courts, including Judge Amini's order in the present case,[5] held that the language "direct physical loss of or damage to" is ambiguous and must be construed in favor of the insureds. *Id*. at 1219 (citing *Perry St. Brewing Co. v. Mut. of Enumclaw Ins. Co.*, No. 20-2-02212-32, 2020 WL 7258116 (Wash. Super. Ct. Nov. 23, 2020); *Hill and Stout PLLC v. Mut. of Enumclaw Ins. Co.*, No. 20-2-07925-1 SEA, 2020 WL 6784271, at *1 (Wash. Super. Ct. Nov. 13, 2020)). Nonetheless, Judge Rothstein disagreed, reasoning that

---

[5] *Nguyen* came out before Judge Chung's order granting summary judgment in favor of MOE.

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

> "loss of" is best understood[6] as no longer being able to own or control the property in question. When combined with "direct" and "physical" the Court determines that, in its common usage, "loss" means that the alleged peril must set in motion events which cause the inability to physically own or manipulate the property, such as theft or total destruction.

*Id*. at 1216. She also found that "in arguing that direct physical loss covers loss of income in these circumstances, Plaintiffs conflate *physical* loss with non-physical loss of use." *Id*. at 1217. She ultimately "join[ed] the numerous courts across the country that have held that COVID-19 does not trigger direct physical loss or damage." *Id*. at 1218. Specifically relying on *Villella*, *Fujii*, and *Wolstein*, she concluded that those cases focused on the physicality of the losses at issue and required physical consequence. *Id*. at 1219-20. Accordingly, "the Court finds that these precedents are useful indicators that the Washington Supreme Court would decide that the term 'physical loss' requires dispossession of property." *Id*. at 1220.

We agree with Judge Rothstein's conclusion as to "direct physical loss." While there may be some flexibility to a physical alteration requirement under a loss of functionality test, even under a loss of functionality test there must be some *physical* effect on the property that is not found in the present case. As Judge Rothstein notes, it appears that the strong, if not unanimous, consensus around the

---

[6] While we agree with Judge Rothstein's overall conclusion about "direct physical loss," we disagree with the reference to the "best understood" definition of loss. Under Washington insurance law the definition need not be the *best*, it must only be *reasonable*.

17

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

country is that COVID-19 and related government closures do not amount to "direct physical loss of property." *See, e.g.*, *Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d 1266, 1275-76 (Mass. 2022) (collecting cases and holding, under a similar insurance law structure to Washington, that "the COVID-19 orders standing alone cannot possibly constitute 'direct physical loss of or damage to' property, for the same reason that loss of legal title or other government restrictions cannot themselves physically alter property"); *see also* Resp't's Statement of Additional Auths. at 1-3 (collecting out of state COVID-19 cases with holdings favorable to MOE).

HS urges this court to be wary of out of state COVID-19 insurance cases as Washington insurance law can be different and strongly favors the insured in ways that other jurisdictions may not. While we must keep in mind any differences in Washington law, the national consensus is that COVID-19 and related governmental orders do not cause physical loss of or damage to a property and do not trigger coverage under similar policy language. This national consensus does not decide the present case for us but, instead, adds persuasive authority to bolster our ultimate conclusion.

This interpretation of "direct physical loss" is also consistent with other provisions in the policy. HS seeks lost business income for the suspension of operations, which is covered during a "period of restoration" when the suspension is

18

due to "direct physical loss of or damage to property." "Period of restoration" under the policy begins "72 hours after the time of direct physical loss or damage for Business Income Coverage" and "[e]nds on the earlier of: (a) The date *when the property at the described premises should be repaired, rebuilt or replaced* with reasonable speed and similar quality; or (b) The date when business is resumed at a new permanent location." CP at 381-82 (emphasis added). If there were no physical changes or danger in regard to the property, there would be nothing to repair, rebuild, or replace.

Ultimately, "direct physical loss of" modifies "property." The average person purchasing a property insurance policy would take this to mean that the property must be directly physically lost to trigger coverage. HS makes no allegations of any direct physical loss of the property, only the loss of its intended use of the property. This is not covered under the plain language of the policy. Any ambiguity in the policy is only to the extent that this phrase could mean the property is completely physically destroyed, is no longer physically in the insured's possession, or the insured is physically incapable of using the property. None of these definitions of loss allow for recovery under the facts of this case. Thus, we hold that the loss of use due to the Proclamation did not trigger coverage.[7]

---

[7] HS also contends that the civil authority coverage was triggered under the policy. Br. of Appellant at 57. In the statement of grounds for direct review, HS mentions civil authority

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

III.     Efficient Proximate Cause and the Virus Exclusion

Although we need not examine the issue of efficient proximate cause and the virus exclusion in this case given our resolution as to the first issue, because it is fully briefed and this issue will likely repeat in other cases regarding the interpretation of similar insurance policies, we address the issue of the virus exclusion. We strictly construe exclusions against the insurer. *Am. Best Food*, 168 Wn.2d at 406.

"The efficient proximate cause rule applies only where two or more independent forces operate to cause the loss." *Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 170, 883 P.2d 308 (1994). Traditionally, "[t]he efficient proximate cause rule states that where a peril specifically insured against sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought, the loss is covered, even though other events within the chain of causation are excluded from coverage." *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731, 837 P.2d 1000 (1992). "'Stated in another fashion, where an insured risk itself sets into operation a chain of causation in which the last step may have been an excepted risk, the excepted risk will not defeat recovery.'" *Id*. (quoting *Villella*, 106 Wn.2d at 815).

---

coverage in a footnote but did not adequately raise this as an issue. *See* RAP 4.2(c)(2). Therefore, we decline to consider this theory of coverage.

20

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

"The opposite proposition, however, is not a rule of law. When an *excluded peril* sets in motion a causal chain that includes covered perils, the efficient proximate cause rule does *not* mandate exclusion of the loss." *Vision One*, 174 Wn.2d at 519. However, "[w]e have left open the possibility that an insurer may draft policy language to deny coverage when an *excluded peril initiates an unbroken causal chain*." *Id*. at 520 (emphasis added). "It is perfectly acceptable for insurers to write exclusions that deny coverage when an excluded occurrence initiates the causal chain and is itself either the sole proximate cause or the efficient proximate cause of the loss." *Xia*, 188 Wn.2d at 183.

Accordingly, the efficient proximate cause rule applies to mandate coverage when an initial covered peril sets a causal chain in motion and that causal chain includes later excluded perils. It does not apply to mandate coverage when an initial *uncovered* peril sets a causal chain in motion that includes covered and/or uncovered losses. *See also Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 380, 917 P.2d 116, 122 (1996) ("If the efficient proximate cause, *the cause that triggers other causes to result in a loss*, is a specifically named, unambiguous excluded peril in the policy, *we will not mandate coverage*." (emphasis added)). Nor does it mandate exclusion when the causal chain is initiated by an excluded peril.

The determination of the efficient proximate cause of loss is a question of fact for the fact finder. *Vision One*, 174 Wn.2d at 520. "[I]t is only when the facts are

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court." *Graham v. Pub. Emps. Mut. Ins. Co.*, 98 Wn.2d 533, 539, 656 P.2d 1077 (1983).

HS contends that there is an issue of material fact such that a jury must decide whether COVID-19 or the Proclamation[8] is the predominating cause of the losses. Br. of Appellant at 60. In contrast, MOE contends that the efficient proximate cause rule does not apply here where there are not two "independent" causes of loss and, if it does, then the efficient proximate cause is COVID-19 as it caused the governor to issue the proclamations. Resp't's Br. at 55-56. We agree with MOE.

In the present case the causal chain is clear: COVID-19 is unique[9] and Governor Inslee issued the Proclamation because of it. HS closed their dental business because of concerns about both COVID-19 and the Proclamation, but that decision was made before the Proclamation. The decision was informed by concerns

---

[8] We assume for the purposes of full analysis of efficient proximate cause that loss from the Proclamation is a covered peril. However, as indicated under our resolution of the first issue, the losses from the Proclamation do not trigger coverage in this case.

[9] COVID-19 and the ongoing pandemic has resulted in unprecedented and widespread government mandated shutdowns and regulations around the world, including curfews; travel restrictions; limitations on work and business in countless industries; various mask, vaccination, and isolation mandates; among others. *See, e.g.*, Caroline Kantis et al., *UPDATED: Timeline of the Coronavirus*, THINK GLOBAL HEALTH (detailed timeline of coronavirus, various governmental restrictions, and vaccine progress), https://www.thinkglobalhealth.org/article/updated-timeline-coronavirus (last visited August 18, 2022). There have been more that 6 million confirmed deaths worldwide, with over 1 million confirmed deaths in the United States. *WHO Coronavirus (COVID-19) Dashboard*, World Health Organization (interactive world map graphic that lists confirmed cases and confirmed deaths worldwide and by county), https://covid19.who.int/ (last visited August 18, 2022).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

about COVID-19, which led to many other proclamations limiting activities in the state. Accordingly, this is a case where the *excluded* peril initiates a sequence with, for the purposes of analysis, a covered peril. It is not *mandated* that the exclusion apply, and the efficient proximate cause also does not apply to *mandate* coverage.

Importantly, a policy cannot contract around the efficient proximate cause rule, i.e., it cannot contract to exclude coverage for excluded perils within a causal chain initially started by a covered peril. *Key Tronic*, 124 Wn.2d at 625-26. Contrary to HS's assertion, MOE does not do so because it does not exclude coverage when the causal chain is initiated by an initial covered peril. *See* Br. of Appellants at 65-66.

The language in the main text of the policy reads, "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of *any other cause or event that contributes concurrently or in any sequence to the loss*." CP at 73 (emphasis added). This would be an example of contracting around the efficient proximate cause rule. However, the policy also includes a specific "Washington Changes" section under which the exclusionary language is replaced, presumably to ensure it does *not* contract around the efficient proximate cause rule. It reads,

> We will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:

23

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

    a.  Directly and solely results in loss or damage; or

    b.  *Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.*

CP at 110 (emphasis added).

This exclusionary language thus appears to contract with the efficient proximate cause rule in mind, excluding coverage when an exclusion is the only cause of loss or initiates the chain of causation of the loss. And we have left open that insurers can contract to say that coverage is excluded for a causal chain initiated by an excluded peril. The exclusionary language in the policy does just that.

Nonetheless HS contends that it is an issue of fact which cause predominates, COVID-19 or the Proclamation. We have remanded for determination of material facts as to the efficient proximate cause of a loss when the causal chain was unclear, not, such as here, when the causal chain is clear. For example, in *Graham*, the court looked at the eruption of Mount St. Helens and the resulting mudslides that destroyed homes. 98 Wn.2d at 534. The policies at issue generally excluded coverage for earth movement but covered earth movement because of an "explosion." *Id*. at 535. We held that it was a question for the jury whether the eruption was an "explosion" such that earth movement would be covered and, if so, whether the explosion caused the resulting mudflows such that the explosion was the efficient proximate cause. *Id* at 539. Accordingly, where there is a question of fact as to which peril *initiated* the

24

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

chain of causation, or *whether* a peril initiated the chain of causation, the case should be remanded for fact-finding.

This is not such a case. In the present case there is no reasonable question as to whether COVID-19 caused the governor to issue the Proclamation. There is no issue of material fact needed to determine that COVID-19, an excluded peril, initiated the causal chain in this case and that the policy excludes the causal chain of losses initiated by an excluded peril. As the causal chain is initiated by an excluded peril, the efficient proximate cause rule does not apply to mandate coverage, and, under the language of this policy, the virus exclusion applies.

CONCLUSION

We affirm the Superior Court's order granting summary judgment in favor of MOE. HS has not demonstrated that it has suffered any "direct physical loss of or damage to" its dental offices. Deprivation of the full intended use of the property is not sufficient to trigger coverage under this clause as nothing "physical" has happened to the covered property. In addition, we hold that the efficient proximate cause rule does not mandate coverage in this case because the causal chain leading to the alleged loss was initiated by an excluded peril, COVID-19, and the policy excludes the causal chain of losses initiated by an excluded peril.

*Hill and Stout v. Mutual of Enumclaw Insurance*, No. 100211-4

Whitener, J.

WE CONCUR.

González, C.J.

Stephens, J.

Johnson, J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Owens, J.

Okrent, J.P.T.